[Crim. No. 6120. Third Dist. Nov. 9, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
JIMMY DAN MORGAN, Defendant and Appellant.

**36**

## COUNSEL

William Gregory, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Daniel J. Kremer and Loren E. McMaster, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**JANES, J.**—Defendant was charged by information with the armed robbery of a pharmacy in Woodland, California, with allegations of five prior felony convictions. Initially he pled not guilty, denied the priors, and the case was set for jury trial. Shortly thereafter, defendant moved to withdraw his not guilty plea in order to enter a negotiated plea of guilty upon condition that the priors be dismissed and that the district attorney not oppose defendant's petition for commitment to the California Rehabilitation Center (CRC) for treatment.

After interrogation by the court and advice as to his constitutional rights, the nature of the crime charged and the consequences of a guilty plea, defendant, with concurrence of his counsel, was permitted to withdraw his not guilty plea. He then pled guilty to first degree robbery, admitting that he was armed with a revolver at the time of the crime. Concurrently with entry of the guilty plea, he signed the declaration set out in part in the margin.[1]

---

[1]"Defendant understands he is not eligible for probation, but will make application for California Rehabilitation Center. The district attorney has agreed to dismiss all priors and not oppose defendant's California Rehabilitation Center application. Defendant understands there is no guarantee of his acceptance by the California

Thereupon the priors were dismissed, criminal proceedings were adjourned, and proceedings were instituted pursuant to section 3051 et seq. of the Welfare and Institutions Code.

Thereafter, on the basis of two medical reports, defendant was found by the court to be in imminent danger of addiction to narcotics and was committed to CRC. Slightly less than three months later he was rejected by CRC.[2] The report then filed by Roland W. Wood, superintendent of CRC, acting for the Director of Corrections,[3] stated: "After reviewing the entire circumstances of this case, it appears that subject's primary problem is criminality. In addition it appears that subject is an escape hazard . . . Jimmy Dan Morgan is not a suitable candidate for the Civil Addict Program."

Defendant, contending that his rejection was an abuse of discretion on the part of CRC, requested a hearing upon his rejection from the Civil Addict Program. The court conducted a hearing at which testimony and other evidence was received, finding, at its conclusion, that the superintendent had relied upon the circumstances of a Sacramento pharmacy robbery (set out in a police report) for which defendant had never been prosecuted, rather than upon the events of the Woodland pharmacy robbery,[4] and ordered the Director of Corrections "to reconsider his decision to exclude [defendant] from the Civil Narcotic Addict Program and to consider, along with any other matters considered pertinent by him, the circumstances of [the Woodland robbery of which defendant stood convicted.]"

Superintendent Wood complied with the court's new directive. Upon reconsideration of defendant's eligibility, however, the superintendent again concluded that defendant was an unsuitable candidate for the CRC program

---

Rehabilitation Center and that in the event of his rejection, he will receive a state prison sentence."

[2]Welfare and Institutions Code section 3053 provides, "If at any time after 60 days following receipt at the facility of a person committed pursuant to this article, the Director of Corrections concludes that the person, because of excessive criminality or for other relevant reason, is not a fit subject for confinement or treatment . . . , he shall return the person to the court in which the case originated for such further proceedings on the criminal charges as that court may deem warranted."

[3]See *People* v. *Hakeem* (1969) 268 Cal.App.2d 877, 882 [74 Cal.Rptr. 511].

[4]By its memorandum decision, the court pointed out the defendant was "entitled to have a determination of his status made upon the basis of accurate information," and that "[t]here was a substantial error in the factual information relied upon by the Director in formulating his decision to exclude [defendant]." (The superintendent's error is not without explanation. He had not been furnished with a copy of the probation report (see Welf. & Inst. Code, § 3051), the arrest report, a transcript of defendant's preliminary examination, or the medical reports pertinent to the commission of the Woodland robbery.)

and rejected him. The new report filed with the court made clear that defendant's prior criminal record and his potential for escape weighed as heavily in the re-evaluation as those factors did upon the initial reference.[5]

Upon his return to court following his second rejection, defendant requested another hearing on the matter of his suitability for the rehabilitation program and further requested the presence of Superintendent Wood at such hearing. He also moved to withdraw his guilty plea, contending that his plea was conditional and that the bargain had not been kept. The court denied all motions, resumed the criminal proceeding, and after first referring the case to the probation officer for a pre-sentence report sentenced defendant to state prison. The appeal is from that judgment.

## I.

Defendant contends that he was entitled to a second hearing to review the later decision of the Director of Corrections rejecting him for treatment at CRC.

There is no statutory provision for a hearing after the director exercises his authority under section 3053 and rejects a defendant who has been committed by the court for narcotics treatment. The trial court has both the authority and the duty, however, to review the director's action rejecting a defendant from the program, and must undertake such review and conduct a hearing upon request of a defendant. If an abuse of discretion is found to exist, the court should either require the director to reconsider his decision or should order the defendant returned to CRC for execution of the court's original commitment order. (*People* v. *Coley* (1968) 257 Cal.App.2d 787, 793 [65 Cal.Rptr. 559] (disapproved on another point in *People* v. *Delles* (1968) 69 Cal.2d 906, 909-910 [73 Cal.Rptr.

---

[5]The superintendent's report upon reconsideration emphasized that the question of defendant's suitability, with all the required documentary materials at hand, had been re-evaluated by the Exclusion Review Committee (consisting of the deputy superintendent and two associate superintendents) and by the superintendent himself, and the report reaffirmed the superintendent's previous decision finding defendant unsuitable and rejecting him. The report reviewed at length defendant's offense background, which included two Youth Authority commitments for burglaries, and violations of his Youth Authority parole (including one violation based on the sale of narcotics); a county jail commitment for burglary; an earlier but brief commitment under the Civil Addict Program; a five-year federal commitment to a United States Public Health Service hospital in connection wtih an arrest for smuggling heroin, and his escape therefrom seven months after commitment and a resultant five-year sentence to the Federal Correctional Institution at Lompoc, California. The report also noted CRC's contacts with federal correctional and parole authorities from which information was received showing defendant's failure to adapt to the federal parole program, and his severance from federal parole provision when he "absconded to California [from his residence in Oregon] and was arrested for the robberies in the Sacramento/Yolo County area."

389, 447 P.2d 629]), and cases cited therein; *People* v. *Montgomery* (1967) 255 Cal.App.2d 127, 131 [62 Cal.Rptr. 895].)

█ Such authority, however, as the trial court has to review the director's rejection of a candidate for CRC treatment is not unfettered. The court may not redetermine for itself whether defendant's past criminality is of such nature and extent as to disqualify him for the treatment program; the question of the fitness of a given defendant for the rehabilitation program is reserved solely to the director and his staff. (*People* v. *Hakeem, supra,* 268 Cal.App.2d 877, 881-882[6] [cert. den. 396 U.S. 913 (24 L.Ed.2d 189, 90 S.Ct. 231)]; *People* v. *Hannagan* (1967) 248 Cal.App.2d 107, 112 [56 Cal.Rptr. 429].)

█ In the case at bench, defendant received a full hearing upon the director's determination following his initial rejection and return to the court. A copy of defendant's file at CRC was received in evidence. Defendant testified in his own behalf and placed in evidence in some instances the records and in others portions of the records of a number of persons who had been accepted for treatment at CRC to show, by comparison, that the director had abused his discretion in rejecting defendant. A representative of Superintendent Wood testified at the request of the court, and at defendant's request the court received into evidence a document outlining the exclusionary criteria used by CRC. The court declined, however, to issue a subpoena to compel the attendance of Superintendent Wood.

Following this first hearing the court ordered CRC to reconsider defendant's suitability because, as we have pointed out, the superintendent, upon the basis of the Sacramento arrest report before him, had erroneously focused his attention not upon the case at bench, but upon the circumstances of an offense for which defendant had not been charged or convicted.

In his memorandum decision ordering reconsideration of the CRC decision, the trial judge appeared to feel that defendant was a proper candidate for the rehabilitation program, and he discussed the circumstances of defendant's offense in a favorable manner, as compared with the circum-

---

[6]The Attorney General interprets *Hakeem* in an overly broad manner, however, when he states that "the trial court need not hold a hearing when the suspected narcotic addict is excluded on the ground of excessive criminality (citing *Hakeem*)." To the contrary, the court in *Hakeem* pointed out that the court has the power and competence, if requested, to determine whether or not the criminality relied upon by the director *actually* exists. (*People* v. *Hakeem, supra,* p. 883; see *People* v. *Montgomery, supra,* 255 Cal.App.2d 127, 131.) *Hakeem* does stand for the proposition that the court cannot redetermine whether such criminality *in fact renders a person unfit for treatment. (People* v. *Hakeem, supra,* p. 881.)

stances of the robbery report which had been erroneously considered by CRC.[7] It is clear from his written decision, however, that he based his order for reconsideration solely upon the fact that CRC had erroneously considered the circumstances of the March 4 incident rather than the March 21 robbery of which defendant was convicted.[8] That was the only abuse of discretion found by the court.

The superintendent having re-evaluated his case in the light of the court's memorandum decision and the facts and circumstances of the correct offense, defendant was not entitled to another hearing upon the second rejection by CRC. He was given the opportunity to present evidence and fully presented his views at the hearing held after the first CRC report and rejection; at the conclusion of that hearing and prior to the court's decision, the issues were argued orally and by written briefs. Following the order for reconsideration an extensive report was filed with the court by Superintendent Wood in justification of his decision and that of the Exclusion Review Committee again to reject defendant, based in part upon his evaluation of the significance of the current offense.[9] At the same time, the superintendent reiterated his opinion that defendant was an escape risk, pointing

---

[7]The latter report concerned the robbery of a pharmacy in Sacramento, allegedly committed on March 21, 1970, by defendant and his brother. The police report states that defendant drove the getaway car at speeds in excess of 100 miles per hour before the police were able to stop the vehicle by firing a round at the rear tires. It also recites that defendant's brother pointed a gun at the female clerk during the course of the robbery. The trial judge pointed out that in the robbery of which defendant here stands convicted defendant, on March 4, 1970, walked into a drugstore, asked to speak to the pharmacist, pulled a gun from his trousers, announced a "holdup" and demanded Class A drugs and paper money of the pharmacist. The gun was not pointed at the pharmacist, but was kept pointed at the floor. When the drugs and $423.93 in money had been placed in a paper bag, defendant cut the telephone wire, said, "Give me five minutes" and went out the door of the pharmacy.

[8]The memorandum decision reads, in part: "The Court concedes that it has no power to redetermine whether [defendant's] past criminality is of such nature as to disqualify him for the CRC program. The statute leaves to the CRC and its professional experts, as it should, the final decision on whether or not treatment should be begun or be continued. (Citations.) However, petitioner is entitled to have the decision of the CRC and its experts made upon the basis of accurate information. That was not done. The offense for which [defendant] was committed is the first offense in which he used a weapon and the Court believes an adequate determination of his acceptibility cannot be made without considering the circumstances of that offense. . . ."

[9]The new report noted that defendant "was identified by the victims as the person who entered [the Woodland pharmacy] and robbed it of drugs and monies while being personally armed, although he didn't point the gun at the victims. The method of operation shows planning and a degree of sophistication not possessed by novices." The report went on to point out that "the carrying of wire cutters, the subsequent cutting of telephone wires, the demand for 'Class A' narcotics and the rejection of 'Class B' narcotics, demonstrates . . . experience in this type of activity."

to defendant's escape from the United States Public Health Service Hospital preceding his federal prison commitment.[10]

■ There was likewise no error in denying defendant the right to subpoena Superintendent Wood, who acted for the director in rejecting defendant from the CRC program. There is no statutory provision allowing a candidate for the rehabilitation program to compel attendance of the superintendent at a hearing on the suspected addict's suitability for treatment.[11] While it has been suggested that, at a hearing conducted following a defendant's rejection, the "authorities" at CRC might be called by defendant as witnesses (see *People* v. *Montgomery, supra,* 255 Cal.App.2d at p. 131, fn. 2), the few cases dealing with the type of evidence to be considered by the court at a hearing of this type indicate that the record and information furnished by the director may be sufficient without independent investigation. (*People* v. *Berry* (1967) 247 Cal.App.2d 846, 849-850 [56 Cal.Rptr. 123]; see also *People* v. *Harris* (1971) 17 Cal.App.3d 388, 399-400 [95 Cal.Rptr. 80].) Here notwithstanding that conclusion, it is significant that Mrs. Lois A. Franco, special representative of the civil addict program, appeared and testified at the first hearing, and her services were again offered by the superintendent when he made his second determination of unsuitability.

■ Wholly apart, however, from the question of defendant's entitlement to produce witnesses, defendant's offer of proof upon his request for a second hearing related, as we have pointed out, to an issue which the court had no power to redetermine, i.e., the effect to be accorded defendant's excessive criminality in determining his suitability for treatment.[12]

Defendant's contention that he was erroneously denied a second hearing

[10]The superintendent added: "Despite the fact that [the U. S. P. H. S. hospital] facility is a hospital, it is, to my personal knowledge, a much more custodially secure physical plant than C.R.C. The circumstances of that escape indicate that this was deliberately planned and carried out. It is evident that the Federal authorities considered the matter serious, and Subject was given a 5-year sentence *consecutive* with any other sentence then being served. Although that took place six years ago, it is my judgment that the escape was behavior that is consistent with the evaluation of the criminality of Mr. Morgan's behavior pattern. . . ." (Italics in original.)

[11]See, however, Welfare and Institutions Code section 3105, granting a defendant the right to have subpoenas issued to secure the attendance of witnesses at the hearing of a petition filed under sections 3050 and 3051.

[12]"Excessive criminality," under standards adopted by the Director of Corrections, includes a person who uses dangerous or deadly weapons in the commission of the instant or previous offenses, and a person who traffics in narcotics, marijuana, dangerous drugs, or stimulants over and above the amount necessary for his immediate narcotic needs. (Letter entitled "Exclusionary Criteria from the California Rehabilitation Center," Corona, California, dated June 3, 1970 admitted into evidence as defendant's Exhibit A.)

is further based upon his complaints that the director ignored the court's memorandum decision in not comparing defendant's record with the "worse" records of other persons who had been accepted by CRC,[13] and that CRC's policy of accepting persons whose offenses were of a nonviolent, narcotics related nature was ignored in defendant's case.

The trial judge did not err in rejecting the contention. No abuse of discretion is shown on the part of the director, and there was no denial of due process. Essentially, defendant was asking the court to hear further evidence upon an issue which the court had no right to determine, i.e., whether defendant's past criminality was in fact of such nature and extent as to disqualify him for the treatment program. Although the court may have felt that defendant was a proper subject for such rehabilitation, this question, as we have emphasized, is reserved solely to the Director of Corrections and his staff and is not a subject for the court's redetermination. Moreover, there was no material difference in the first and second CRC determinations except the nature and circumstances of the current offense of which defendant had been convicted, and the trial judge was able by review of the official records before him and a reading of the superintendent's second report to verify that the correct offense facts had been relied upon. (See *People* v. *Hakeem, supra*, 268 Cal.App.2d at p. 882.)

## II.

Defendant's second contention is that the court erred in denying him permission to withdraw his guilty plea. He argues that the plea was entered upon the condition that he be accepted for treatment at CRC, and—because he was rejected for such treatment—that he was entitled to withdraw his plea of guilty.

When a defendant pleads guilty as part of a bargain[14] with a reliable public official or the court where he is assured of receiving in return for his plea some form of special consideration, the trial judge cannot impose judgment contrary to the terms of such bargain without giving the defendant an opportunity to withdraw his guilty plea. (*People* v. *Delles, supra,* 69 Cal.2d at p. 910.) A defendant cannot be permitted, however, to gamble upon the expected result of a plea of guilty and, when disappointed in such

---

[13]Records of other CRC inmates were admitted into evidence, it will be recalled, at the first hearing.

[14]Although the mechanics of the plea bargain are not fully outlined in the record before this court, the proceedings in question antedated the filing of *People* v. *West* (1970) 3 Cal.3d 595 [91 Cal.Rptr. 385, 477 P.2d 409], in which the Supreme Court discussed the questions of disclosure and the type of record thereafter to be made in plea bargaining. (3 Cal.3d 595, 608-614.)

anticipation, reestablish his right to trial. (*People* v. *Fratianno* (1970) 6 Cal.App.3d 211, 222 [85 Cal.Rptr. 755].)

 ▉  Defendant's contention is patently meritless. Here the bargain expressly contemplated the possibility that defendant would not be accepted for treatment.[15] There was no agreement that defendant would be entitled to withdraw his guilty plea in the event he was rejected for treatment. The bargain made was honored by both the prosecution and the court, and there is no room for doubt that the trial court properly exercised its discretion in denying defendant's request to withdraw from the guilty plea.

The judgment is affirmed.

Regan, Acting P. J., and Bray, J.,* concurred.

---

[15]See that portion of defendant's declaration set out at footnote 1, *supra.*

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.