[Crim. No. 15053. First Dist., Div. One. Apr. 20, 1977.]

THE PEOPLE, Plaintiff and Appellant, v.
MAX RALPH TOSCANO, Defendant and Respondent.

[Crim. No. 15054. First Dist., Div. One. Apr. 20, 1977.]

THE PEOPLE, Plaintiff and Appellant, v.
NORMAN E. SCOTT, Defendant and Respondent.

COUNSEL

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Herbert F. Wilkinson, William D. Stein and David Schneller, Deputy Attorneys General, for Plaintiff and Appellant.

Douglas R. Schmidt, under appointment by the Court of Appeal, for Defendants and Respondents.

OPINION

**SIMS, Acting P. J.**—The People have appealed from orders entered in proceedings taken following the return to court of each of the above named defendants pursuant to the provisions of section 3053 of the Welfare and Institutions Code.[1] In each case the court ordered the sheriff to return the defendant to the California Rehabilitation Center (CRC), and directed the superintendent of that institution to receive the defendant and retain him until further order of court.[2] Because of the identity of issues involved the cases were consolidated for hearing and decision on appeal.

[1]Section 3053 provides: "If at any time following receipt at the facility of a person committed pursuant to this article, the Director of Corrections concludes that the person, because of excessive criminality or for other relevant reason, is not a fit subject for confinement or treatment in such narcotic detention, treatment and rehabilitation facility, he shall return the person to the court in which the case originated for such further proceedings on the criminal charges as that court may deem warranted."

[2]In *People* v. *Peoro* (1976) 56 Cal.App.3d 35 [128 Cal.Rptr. 130], the People and the superintendent sought a stay of the order of recommitment. The court ruled, ". . . once the notices of appeal were filed by the People in the four cases before us, the execution of the recommitment order was automatically stayed. Because we have so held, the issuance of a writ of supersedeas is unnecessary."

The People complain that at the hearings the court erred in requiring the superintendent to establish that he did not abuse his discretion in finding that the defendant in each case was not a fit subject for confinement or treatment, in excluding evidence proffered by the People in support of the superintendent's determination, and in issuing an order to show cause to the superintendent to appear before the court. On behalf of the defendants it is asserted that the trial court ruled properly in the foregoing particulars, and, in support of the order, that the People have no right to appeal from the order, and that the exclusion of each defendant from CRC was an abuse of discretion and was violative of the doctrine of separation of powers. On behalf of Scott it is further urged that his exclusion from CRC was a violation of his plea bargain, and that if the order is reversed he should be permitted to withdraw his plea. Toscano complains that because of the stay of the order (see fn. 2) he has been committed to the Department of Corrections without a valid judgment having been pronounced.

The order is appealable and the provisions of section 3053 are constitutional and do not violate the doctrine of separation of powers. The record reflects that the trial court misunderstood its function in its review of the superintendent's decision. The superintendent was entitled to make a prima facie case from the records offered in evidence. Since they established a prima facie case with respect to each defendant, and there is no dispute concerning the factual basis for the decision, only the conclusions to be drawn therefrom, the decision of the superintendent must be upheld, and the orders must be reversed. Any move to withdraw Scott's guilty plea must await further proceedings before the trial court as provided for in section 3053. Toscano's confinement pending sentencing can only be attributed to his attempt to secure readmission to CRC. It may be assumed that he will receive credit for time served in any subsequent disposition of the case.

I

The code is silent concerning the right to review a determination under section 3053 that a person committed pursuant to provisions found in sections 3050 and 3051 is not a fit subject for confinement or treatment in CRC. ■ "The superior court's power to review an order excluding a defendant from CRC is a creature of case law, not statute. [Citations.]" (*People* v. *Peoro* (1976) 56 Cal.App.3d 35, 39 [128 Cal.Rptr. 130]. See *People* v. *Wisdom* (1975) 47 Cal.App.3d 482, 489 [120 Cal.Rptr. 745]; *People* v. *Munoz* (1973) 31 Cal.App.3d 87, 91 [107 Cal.Rptr. 451]; *People* v. *Morgan* (1971) 21 Cal.App.3d 33, 38 [98 Cal.Rptr. 165]; *People* v.

*Fuller* (1971) 20 Cal.App.3d 159, 165 [97 Cal.Rptr. 455]; *People v. Hakeem* (1969) 268 Cal.App.2d 877, 881 [74 Cal.Rptr. 511] [cert. den. (1969) 396 U.S. 913 (24 L.Ed.2d 189, 90 S.Ct. 231)]; *People v. Montgomery* (1967) 255 Cal.App.2d 127, 131 [62 Cal.Rptr. 895] [cert. den. (1968) 390 U.S. 1034 (20 L.Ed.2d 292, 88 S.Ct. 1430)]; and *People v. Berry* (1967) 247 Cal.App.2d 846, 849-850 [56 Cal.Rptr. 123]. Cf. *People v. McCowan* (1966) 244 Cal.App.2d 624, 627 [53 Cal.Rptr. 406].)

■ The commitment under sections 3050 or 3051 is deemed to be civil in nature and is appealable as a final judgment in a special proceeding. The People are therefore entitled to appeal from the order of recommitment as an appeal from an order made after final judgment (order) in a special proceeding. (Code Civ. Proc., §§ 904, 904.1, subd. (b); *People v. Munoz, supra,* 31 Cal.App.3d 87, 91; and see *People v. Peoro, supra,* 56 Cal.App.3d 35, 39.) There is no merit to the defendants' contention that the order was not appealable.

## II

■ The defendants contend that section 3053 violates the constitutional principle of separation of powers insofar as it enables the Director of Corrections, through the superintendent, to countermand the order of the committing court, even though that court has found that the case is unusual and the interests of justice would best be served by a commitment notwithstanding the provisions of section 3052 (see § 3051). The principles on which they rely are collated in *People v. Superior Court (Felmann)* (1976) 59 Cal.App.3d 270 [130 Cal.Rptr. 548], as follows: "While the legislative branch of government bears the responsibility and power to define criminal offenses and to prescribe punishment in mandatory or alternatively permissible forms, the imposition of sentence within the legislatively determined limits is exclusively a judicial function. (*People v. Navarro* (1972) 7 Cal.3d 248, 258 . . . .) Hence, the exercise of sentencing power cannot be made subject to the consent of the district attorney because the requirement of that consent is an injection of the executive into the province of the judicial branch of government. (*People v. Tenorio* (1970) 3 Cal.3d 89, 95 . . . .) Similarly, once the executive power has been exercised by the filing of a criminal charge 'the process which leads to acquittal or to sentencing is fundamentally judicial in nature.' (*People v. Tenorio, supra,* at p. 94; *People v. Superior Court (On Tai Ho)* (1974) 11 Cal.3d 59, 65 . . . .) Thus, separation of powers mandates that a statute may not constitutionally require the consent of the prosecuting attorney to judicial action striking prior convictions to mitigate the sentence imposed (*People v. Tenorio,*

*supra,* at p. 94), determining that a charged offense should be tried as a misdemeanor rather than a felony (*Esteybar* v. *Municipal Court* (1971) 5 Cal.3d 119, 127 . . .), civilly committing a defendant to a narcotics rehabilitation program (*People* v. *Navarro, supra,* 7 Cal.3d 248, 259), granting probation in an unusual case where, except in unusual cases, probation may not be granted after conviction of a defined offense under particular circumstances (*People* v. *Clay* (1971) 18 Cal.App.3d 964 . . .), or ordering a defendant charged with a narcotics offense to be 'diverted' into a pretrial program of treatment. and rehabilitation (*People* v. *Superior Court (On Tai Ho), supra,* 11 Cal.3d 59, 61)." (59 Cal.App.3d 270 at p. 275.)

This contention rests upon the same misapprehension of the nature of the proceedings which pervaded the hearing below. It was fully refuted in *People* v. *Wisdom, supra,* where the court rejected a similar argument as follows: "The provisions of the Welfare and Institutions Code concerning the involuntary commitment of a person convicted of a crime to the Director of Corrections for confinement in a narcotic rehabilitation facility authorize two separate and distinct determinations respecting the effect of his criminality upon his fitness to participate in the rehabilitation program provided by the state. Each determination is for a separate and distinct purpose [citation]. One determination is judicial and the other is administrative.

"As noted, section 3051 directs the court, in the event it appears to the judge the defendant may be addicted or in imminent danger of becoming addicted to narcotics, among other things, to adjourn the proceedings and order the district attorney to file a petition for commitment of the defendant to the Director of Corrections for participation in the narcotics rehabilitation program 'unless, in the opinion of the judge, the defendant's record and probation report indicate such a pattern of criminality that he does not constitute a fit subject for commitment *under this section.*' (Italics ours.) In forming an opinion on the question of defendant's criminality and its relationship to his fitness for commitment, obviously, the judge exercises a judicial function. However, the purpose thereof is limited to determining whether the defendant is a fit subject for commitment under section 3051. The determination thus made relates only to a condition precedent to institution of proceedings to determine whether he is addicted or in imminent danger of becoming addicted [citation], and whether he should be committed for placement in the rehabilitation program; in effect determines only whether it is worthwhile to try him on the program; and is a tentative determination [citations]. The decision and findings

incident thereto, as outlined, are not subject to veto by the Director of Corrections, as contended by defendant [citation]. The decision to institute proceedings to place the defendant in the program is complete upon making the order directing the district attorney to file the designated petition (*ibid*). In the event the legal proceedings instituted by the petition result in a finding of addiction or imminent danger of addiction and a final order of commitment, the preliminary judicial functions prescribed by the statute are completed.

"At any time after receipt of the defendant at the designated facility, the Director of Corrections may return him to the court for further proceedings on the criminal charges in the event the director concludes the defendant 'is not a fit subject for confinement or treatment in the facility' because of excessive criminality or other relevant reasons. This is an administrative decision. Pertinent is the following from *People* v. *Marquez, supra,* 245 Cal.App.2d 253, 256-257: ' . . . the judge has no expertise to decide, and the statute does not assume that he will decide, that the defendant, in fact, is a fit subject for commitment and treatment, judged either by his past record or by his ability (for reasons either of character, intelligence or aptitude) to respond to treatment; the judicial decision is merely that, as far as the court's limited knowledge about defendant, and the judge's nonexpert opinion, permit, it is worthwhile to try the rehabilitation program in his case. But whether or not any given defendant can be treated with success is a fact which, in the last analysis, must be determined not by judges but by people trained in that field and actually engaged in the treatment process. Hence, out of practical necessity, the statute leaves to the professional experts the final decision on whether or not treatment should be begun or be continued.' (*People* v. *Marquez, supra,* at pp. 256-257.)" (47 Cal.App.3d 482, 486-487. In addition to *People* v. *Marquez* (1966) 245 Cal.App.2d 253 [53 Cal.Rptr. 854], as cited above; see *People* v. *Munoz, supra,* 31 Cal.App.3d 87, 93, fn. 3; *People* v. *Fuller, supra,* 20 Cal.App.3d 159, 165; *People* v. *Hakeem, supra,* 268 Cal.App.2d 877, 882; and *People* v. *Hannagan* (1967) 248 Cal.App.2d 107, 112 [56 Cal.Rptr. 429].)

The *Wisdom* court concluded, "The statute does not authorize the director to exercise a judicial function; vest in him the authority to veto a judicial decision; permit him to interfere with the sentencing process which the court adjourned; or intrude upon an exercise of the judicial function to review the administrative decision." (47 Cal.App.3d at

p. 489.)[3] We now examine the extent of the judicial function in reviewing the administrative decisions.

### III

"When the Director of Corrections rejects a person committed to the rehabilitation center under the authority conferred by Welfare and Institutions Code, section 3053, the trial court has authority to review his action for the purpose of determining whether or not the rejection constituted an abuse of discretion; upon request by the defendant must undertake such a review and conduct a hearing; in reviewing the decision may rely upon the record and information furnished by the director, as well as other pertinent evidence; and, in the event it determines there was an abuse of discretion, should require the director to reconsider his decision or should return the defendant to the rehabilitation center for execution of its original commitment order. [Citations.]" (*People* v. *Montgomery, supra,* 255 Cal.App.2d 127, 131.)

■ As stated in the foregoing quotation the record to be considered is that before the administrator who made the decision under section 3053. The trial court therefore erred in each proceeding by striking and excluding the letters and materials from the institution. (See *People* v. *Blackwell* (1975) 45 Cal.App.3d 804, 811-812 [119 Cal.Rptr. 768]; *People* v. *Morgan, supra,* 21 Cal.App.3d 33, 40-41; *People* v. *Fuller, supra,* 20 Cal.App.3d 159, 165-167; *People* v. *Hannagan, supra,* 248 Cal.App.2d 107, 111; and *People* v. *Berry, supra,* 247 Cal.App.2d 846, 850.) In the case last cited the court stated: "In reviewing a decision of the director the trial court may rely upon the record, probation reports and information furnished to the court by the director. We see no reason to require the trial judge to conduct an independent investigation upon review of a decision of the director when such investigation is not required by the statute when the trial judge initially determines the fitness for commitment of a convicted defendant. [Citations.]" (247 Cal.App.2d at p. 850.)

■ It is also clear that the burden of proof in the sense of coming forward with evidence (see Evid. Code, §§ 550, 500 and 522) to show that the superintendent abused his discretion in rejecting the defendant, is on the defendant. (See *People* v. *Hakeem, supra,* 268 Cal.App.2d 877,

---

[3]The provisions of section 3053 have also been upheld against arguments that they are vague and that they deny equal protection of the laws. (See *People* v. *Fuller* (1971) 20 Cal.App.3d 159, 163-164 [97 Cal.Rptr. 455]; *People* v. *Marquez, supra,* 245 Cal.App.2d 253, 255-257; and *People* v. *Hannagan, supra,* 248 Cal.App.2d 107, 111-113.)

881-882; *People* v. *Montgomery, supra,* 255 Cal.App.2d 127, 131-132; *People* v. *Hannagan, supra,* 248 Cal.App.2d 107, 115; and *People* v. *McCowan* (1966) 244 Cal.App.2d 624, 627-628 [53 Cal.Rptr. 406].) ■ Neither the fact that the court in the criminal proceedings directed a petition to be filed, nor the fact that the court in the ensuing civil proceedings made an order of commitment detracts from the discretion vested in the superintendent under the provisions of section 3053. (See *In re Marks* (1969) 71 Cal.2d 31, 40, fn. 6 [77 Cal.Rptr. 1, 453 P.2d 441]; *People* v. *Wisdom, supra,* 47 Cal.App.3d 482, 486-488; *People* v. *Fuller, supra,* 20 Cal.App.3d 159, 169; *People* v. *Hakeem, supra,* 268 Cal.App.2d 877, 881-882; *People* v. *Hannagan, supra,* 248 Cal.App.2d 107, 112; *People* v. *Berry, supra,* 247 Cal.App.2d 846, 853; and *People* v. *Marquez, supra,* 245 Cal.App.2d 253, 256-257.) It is contended that the foregoing principle should not apply where the criminal court was fully apprised of the defendant's "pattern of criminality," or where the committing court in the exercise of the discretion conferred by sections 3050 and 3051 finds the case to be an unusual case where the interests of justice would best be served by a commitment notwithstanding the defendant was otherwise ineligible for treatment under the provisions of section 3052. We find nothing in statute or in the cases themselves so qualifying the discretion vested in the Director of Corrections by section 3053. Nor does the fact that the superintendent as the delegate of the Director of Corrections rejected recommendations of members of his staff that the defendant be retained for treatment, of itself, show an abuse of discretion by the superintendent. (See *People* v. *Munoz, supra,* 31 Cal.App.3d 87, 95; *People* v. *Fuller, supra,* 20 Cal.App.3d 159, 165; and *People* v. *Hakeem, supra,* 268 Cal.App.2d 877, 882.) ˙

*People* v. *Dominguez* (1969) 2 Cal.App.3d 1072 [83 Cal.Rptr. 226], upon which the defendants rely is not to the contrary. There the trial judge in the criminal proceeding considered and rejected a letter which apparently contained an advisory opinion to the defendant from the superintendent, indicating that the superintendent did not think the defendant was suitable for return to the program. The court on appeal there held that the trial judge and the committing court properly exercised their discretion in suspending proceedings and originally committing the defendant, and it also approved the subsequent rejection by the superintendent under section 3053. (See 2 Cal.App.3d at p. 1075.)

■ The scope of review has been well defined. If the finding of unfitness and return to court is based on excessive criminality the following principles apply: "The court may not redetermine for itself whether defendant's past criminality is of such nature and extent as to

disqualify him for the treatment program; the question of the fitness of a given defendant for the rehabilitation program is reserved solely to the director and his staff. [Citations.]" (*People* v. *Morgan* (1971) 21 Cal.App.3d 33, 39 [98 Cal.Rptr. 165], note also pp. 41 and 42. See also *People* v. *Fuller, supra,* 20 Cal.App.3d 159, 164-165; *People* v. *Hakeem, supra,* 268 Cal.App.2d 877, 881-882; and *People* v. *Montgomery, supra,* 255 Cal.App.2d 127, 131.) "However, while the court cannot evaluate the significance of criminality on defendant's fitness for treatment, it can determine whether or not the criminality relied upon by the superintendent actually existed." (*People* v. *Fuller, supra,* 20 Cal.App.3d 159, 165. See also *People* v. *Morgan, supra,* 21 Cal.App.3d 33, 37, fn. 4 and accompanying text; and *People* v. *Hakeem, supra,* 268 Cal.App.2d 877, 882.)

If the finding of unfitness is predicated upon some reason other than excessive criminality the defendant is entitled to a review by the court to the extent of determining that the reason cited is legally relevant on the issue of subject's fitness for confinement or treatment in an established narcotic detention, treatment and rehabilitation facility. (See *People* v. *Blackwell* (1975) 45 Cal.App.3d 804, 810-811 [119 Cal.Rptr. 768]; *People* v. *Munoz, supra,* 31 Cal.App.3d 87, 91-92; *People* v. *Hernandez* (1970) 10 Cal.App.3d 646, 648-649 [89 Cal.Rptr. 192]; *People* v. *Hakeem, supra,* 268 Cal.App.2d at p. 881; *People* v. *Hannagan, supra,* 248 Cal.App.2d 107, 111-112; and *People* v. *Marquez, supra,* 245 Cal.App.2d 253, 257.) Here, also, as in the case of "excessive criminality" the defendant is entitled to a determination that there is a factual basis supporting the established relevant reason. (See *People* v. *Munoz, supra,* 31 Cal.App.3d 87, 92-96.) Once it is established that relevant reasons in fact exist the question of whether or not they are so serious as to require rejection from the program is for the director and not for the court. (*People* v. *Marquez, supra,* 245 Cal.App.2d 253, 257.)

■ In the light of the foregoing it has been recognized that the defendant does not have an unqualified right to have the director's deputy, the superintendent, present as a witness. (See *People* v. *Morgan, supra,* 21 Cal.App.3d 33, 41; and *People* v. *Fuller, supra,* 20 Cal.App.3d 159, 166-177.) In the former case the court stated: "There was likewise no error in denying defendant the right to subpoena Superintendent Wood, who acted for the director in rejecting defendant from the CRC program. There is no statutory provision allowing a candidate for the rehabilitation program to compel attendance of the superintendent at a hearing on the suspected addict's suitability for treatment. While it has been suggested that, at a hearing conducted following a defendant's rejection,

the 'authorities' at CRC might be called by defendant as witnesses [citation], the few cases dealing with the type of evidence to be considered by the court at a hearing of this type indicate that the record and information furnished by the director may be sufficient without independent investigation. [Citations.]" (21 Cal.App.3d at p. 41, fn. omitted.) In the latter case the court found that the trial court did not err in excusing the superintendent who had been subpoenaed by the defendant, when a representative was present to identify the records of the institution. The court reasoned, "As we have pointed out above, the only issue which the trial court could consider was whether, in fact, defendant's record showed criminality; whether or not the criminality justified defendant's rejection from the program was entirely in the judgment of the superintendent and that judgment was not subject to review by the trial court. It follows that the only matter about which Superintendent Wood could have been examined was the factual existence of criminality. But that fact was a matter of official record and, if testimony that those records were before the superintendent was required, the associate superintendent was equally competent to testify as to the contents of the institutional records relating to defendant." (20 Cal.App.3d at p. 167.)

At the conclusion of the original hearing held following the defendant Scott's return to court, the court continued the matter two weeks, and stated, "I want the superintendent of the institution to show cause why, with competent evidence, this man should not be returned to the institution because there is no evidence that he has not abused his discretion in returning him to this Court." At the request of the attorney for the defendant an order to show cause was prepared and issued.[4] At the time set for hearing the superintendent was not present but a deputy attorney general appeared for him. The court persisted in rejecting the superintendent's letter, the reports accompanying it, the probation report and relevant police report as evidence of facts, whether established or not, upon which the superintendent made his decisions with respect to

---

[4]The order to show cause read: "To Roland W. Wood, Superintendent, California Rehabilitation Center, P.O. Box 841, Corona, California: [¶] YOU ARE ORDERED TO PERSONALLY APPEAR TO SHOW CAUSE [place and time omitted] why this Court should not find that you have abused your discretion in excluding NORMAN E. SCOTT from the California Rehabilitation Center. At such hearing you will be required to adduce competent evidence, if there be any, to support your decision, this Court having ruled in this case that the CRC file is not competent evidence and, therefore, not admissible. [¶] Your failure to appear in these proceedings will result in a finding of this Court that you have abused your discretion, and the issuance of any final order deemed necessary and proper to effectuate NORMAN E. SCOTT'S TREATMENT IN THE CIVIL ADDICT PROGRAM."

Scott and Toscano. Their probation reports and police reports, and in the case of Toscano, a report prepared under section 1203.03 of the Penal Code, were admitted, however, to reflect that the court had considered the criminality and other relevant matters before committing the defendants and waived the exclusion under section 3052. The court also struck the testimony the superintendent's representative had previously given in Toscano's case, and refused an offer of similar testimony with respect to Scott.

The court then concluded in each case that there was no competent evidence produced in either case to support the administrative exclusion order and ordered the recommitment of each defendant.

It is obvious from the foregoing precedents that the trial court was 180 degrees off course in its concept of the scope and nature of the proceedings and the resulting rulings on the burden of proof, the admission of evidence, and the necessity of the presence of the superintendent, who was in fact never properly subpoenaed as a witness. All of the relevant evidence has been made part of the record either by admission for a limited purpose, or by having been marked for identification, or as testimony received and stricken on the subject of an offer of proof. Therefore, in the interests of judicial economy we address the merits of the cases, rather than remanding them for a second hearing.

IV

A

■ Under date of September 25, 1975, the superintendent of CRC at Corona wrote the court as follows with respect to defendant Scott: "The case of Norman E. Scott has been reviewed for suitability for the Civil Addict Program. It is our evaluation that he is not suitable because of excessive criminality and failure to respond to prior programs. The attached document is a summary of the pertinent history in this case. [¶] Norman E. Scott was received by the Civil Addict Program on July 7, 1975, under Welfare and Institutions Code Section 3051. His commitment supervened his conviction of Possession Controlled Substance in Superior Court of San Francisco County (Case Number 90077) on June 12, 1975. [¶] Subject is a 48 year old who has been in and out of the California prison system since 1951. He was originally committed for Car Theft and Armed Robbery. He received an additional commitment to the California Department of Corrections in 1957, for Burglary, and another commitment in 1970, for burglary. He has escaped once and has

been placed on parole seven times. [¶] Mr. Scott has seldom stayed in the community over a year at a time. He has a lengthy arrest record and has programmed extensively in California Department of Corrections' facilities. [¶] He is well institutionalized and has failed on numerous occasions to utilize the treatment resources available to him. At this stage, he has to be considered nonamenable. [¶] He is well entrenched in his criminal/addict life style and shows little indication of changing. His presence at the California Rehabilitation Center would certainly hamper other programming. He most assuredly does not meet the criteria for the California Rehabilitation Center. [¶] In view of the foregoing, Norman E. Scott is referred to the Court pursuant to the provisions of Welfare and Institutions Code Section 3053 for such further proceedings on the suspended criminal charges as may be deemed warranted. . . ."

Submitted with the letter were a cumulative case summary dated September 18, 1975; a copy of the Bureau of Criminal Identification and Investigation record ("rap sheet") consisting of seven pages and covering the period from July 14, 1949, to his commitment to CRC on July 11, 1975; and a case summary consisting of a face sheet with a summary of data concerning the subject, an initial study and a closing summary. There was also before the court a probation report prepared July 3, 1975, consisting of a face sheet, a list of prior offenses from July 14, 1949, to the present offense for which he was arrested March 6, 1975, details concerning the present offense, social factors, an evaluation, and a recommendation that probation be denied. These documents amply sustain the facts and conclusions set forth in the superintendent's letter.

At the hearings no attempt was made to contradict the facts set forth in the foregoing records. They were simply denied admission in evidence to support the superintendent's ruling returning the defendant to court. On appeal the defendant Scott does not question the veracity of the facts so disclosed. His argument is confined to an attack on the People's right to appeal, a refutation of the power of the superintendent to exclude, and a defense of the trial court's rulings concerning the admission of evidence, the burden of proof, and the necessity of the presence of the superintendent. The order of the trial court recommiting the defendant Scott must be reversed. If he has any right to withdraw his plea it may be dealt with when he is rearraigned for sentencing. (See *People* v. *Delles* (1968) 69 Cal.2d 906, 910 [73 Cal.Rptr. 389, 477 P.2d 629]; and *People* v. *Coley* (1968) 257 Cal.App.2d 787, 798-804 [65 Cal.Rptr. 559] [disapproved on other grounds *People* v. *Delles, supra*]. Cf. *People* v. *Morgan, supra,* 21 Cal.App.3d 33, 42-43; and *People* v. *Hakeem, supra,* 268 Cal.App.2d 877, 880-881.)

B

■ ▦ On October 15, 1975, the superintendent wrote the court as follows with respect to defendant Toscano: "The case of Max Ralph Toscano has been reviewed for suitability for the Civil Addict Program. It is our evaluation that he is not suitable because of excessive violence. The attached document is a summary of the pertinent history in this case. [¶] Max Ralph Toscano was received by the Civil Addict Program on August 15, 1975, under Welfare and Institutions Code Section 3051. His commitment supervened his conviction of Robbery, Second Degree, and Kidnapping in Superior Court of San Francisco County (Case Number 89965) on May 1, 1975. [¶] The primary concern in the evaluation of Subject's suitability for programing in the Civil Addict Program is the fact that he inflicted physical injury upon the victim. This act of aggression exceeds the degree of violence acceptable to the Civil Addict Program. [¶] Noted is a prior aggressive pattern which includes arrests for drunk driving, disturbing the peace, obstructing public throughfare [sic], and possession of a switchblade knife. [¶] The recommendation of the Northern Reception Center, California Medical Facility, Vacaville, California, dated June 25, 1975, is noted, but I do not concur based on the criteria of excessive violence demonstrated by the Subject during the commitment offenses. [¶] In view of the foregoing, Max Ralph Toscano is referred to the Court pursuant to the provisions of Welfare and Institutions Code Section 3053 for such further proceedings on the suspended criminal charges as may be deemed warranted. . . ."

Submitted with the letter were institutional records of the same type as have been listed above in connection with Scott. The testimony of the special representative of CRC which was stricken by the court, reflected that the institution in May 1975 had established a guideline and criteria for those eligible for treatment; that those falling in the category of assaultive behavior would be excluded because the program was designed for individuals with nonaggressive tendencies who could be controlled and programmed and treated within the open dormitory, the nonsecurity facility at CRC; and that approximately 60 individuals reside in one open dormitory supervised by only one person during each eight hour shift. She also explained and reviewed the procedures which had been followed in Toscano's case.

The records reflect that in the cumulative case summary Toscano was convicted of robbery in the second degree and kidnaping as a result of the following incident: "On 1-29-75 victim was leaving work when Subject approached him and produced a gun. Subject took victim's car

keys and ordered him into the car. While in the car, Subject struck victim in the eye at which time victim jumped from the car, causing lacerations on his head. Victim later identified Subject from photos. On 2-26-75 Subject surrendered." In the initial study his "rap sheet" is summarized as follows: "His CII report shows his first arrest in July of 1969 on a Drunk charge, wherein he claims to have been convicted of Disorderly Conduct, receiving a 30-day jail sentence. The report shows other arrests in the years 1970, '72, '73 and '75. The most significant of these are the commitment offenses of Robbery, Second Degree, and Kidnapping." The records and the testimony reflect that after he was received at the institution, August 22, 1975, his case was referred to the unit classification committee because of exclusion concerns. The closing summary recites, "He personally appeared before the Committee on 9-25-75, his records were perused and his case was reviewed. Noted were the details arising from the charges of robbery and kidnapping. Essentially, Toscano acosted [sic] the victim, ordered him into his own car and forced him to drive Toscano, meanwhile shouting obscenities and striking the victim. Also noted was the fact that Toscano had been sent to the Northern Reception Center for a 90-day observation, and was returned to the Court with the sender's recommendation that he be committed to the Civil Addict Program. The Unit Classification Committed [sic] referred his case to the Exclusionary Review Committee as a 'Difference-of-Opinion' case. Part felt that he should be retained in the Civil Addict Program based on his minimum arrest history and the other part felt that he should be excluded based on the commitment offense and the violence to the victim. In this manner the case was referred to the ERC." The findings of the latter committee are reported as follows: "On 9-30-75, the Exclusionary Review Committee considered his case, taking into consideration all the circumstances of the commitment offenses. Of particular note was the commission of the robbery and the fact that Toscano hit the victim. Based on these elements of the case, Toscano is not seen as a suitable retention case and recommended for return to Court. . . ." The testimony revealed further review and interview with the deputy superintendent, and final review by the superintendent, before the final decision was made.

On the positive side the closing summary, made on October 3, 1975, prior to the reviews by the deputy superintendent and the superintendent, states: "Thus far, Toscano has responded well to the dormitory program and his Treatment.Plan. As stated, he has pursued his school assignment and his work assignment conscientiously. His behavior has been very good and he has received no derogatory documentations since his arrival at CRC. Were he to continue in this vein, it could reasonably

be expected that he would be able to successfully complete his treatment and secure his release, were he retained in the Civil Addict Program."

The probation report confirms that the victim charged that Toscano was carrying a gun, that he struck the victim on the left eye, and that the victim's further injuries were suffered when he leaped from the moving car. The defendant's explanation is set forth in the margin.[5] The probation report concluded, "The defendant has several prior arrests and convictions, but none of the offenses involved acts of violence. He is a past drug user who currently receives daily methadone and he claims that on the day of the incident he had been drinking alcohol after taking methadone. [¶] He states that this combination led to his involvement in the present offense. Considering the bizarre nature of the present offense, and the defendant's prior record, it is difficult to assess his potential for violence. A report from the Department of Corrections might be useful in evaluating Mr. Toscano's violence potential." It recommended that the defendant be referred to the Department of Corrections under section 1203.03 of the Penal Code.

Toscano was so referred. The subsequent evaluation recommended as follows: "It is respectfully recommended to the Honorable Court that Max Ralph Toscano be considered for commitment to the California Rehabilitation Center under Sections 3000 through 3305 of the Welfare

---

[5] "I Max Toscano committed these crimes while working at Pier 29 as a Longshoreman on January 29.

"I had been drinking alcohol all day and under methadone I went out of my mind. I got into a fight which I was told that I did not start from the other longshoremen. I left the pier 29 while thinking I was being chased by three black men. I was very scared. While driving my car I went off the road into the train tracks and wrecked my car. I was still thinking I was being chased by these men. I got out of my car and started running. I crawled under a train and started crawling. I then started thinking I was back in Vietnam. When I reached the end of the train, I saw a man going to his car. I was very scared and mixed up at this time. I told the man to give me his keys which he did. I was too drunk and emotionally out of my mind. I could not start the car so I told the man to start it for me. While he did this, I pretended to have a gun in my coat pocket, but all I had was a comb. Not realizing how serious these crimes I was not committing [sic], I told him to move over while I started driving. The next thing I could remember was him jumping out of the car while I was driving which made me more scared.

"At this point I didn't know what to do. I then drive home to my wife and child and told them this awful experience I had committed.

"All I was trying to do was get away from these men which I thought they were chasing me. My mother and wife called up the hospital to find out if this man was serious injury [sic] from jumping out of the car.

"I stayed in shock for about three weeks not knowing what to do. Then realizing what I had to do, I turned myself in to jail. These crimes which I committed are like a nightmare to me and my family.

"I have learned one thing about these crimes, I'll never drink again. I have hurt a lot of people because of my drinking."

and Institutions Code." The report sets forth the following reasons: "Staff was unanimous in the opinion subject needs more controls than those offered at local level. He has abused drugs and alcohol and in several instances has displayed some aggressive tendencies. Only by good fortune did the instant offense avoid a much more serious consequence. His admitted abuse of drugs made him appear an appropriate candidate for CRC placement. His probation reports from San Mateo County bear out the fact he was on the Methadone Program through the Veterans Hospital. He is not seen as a good probation candidate."

A review of the information contained in all of the reports including the defendant's family background, education, military record, marital history, and health and employment records, and letters submitted with the probation report discloses adequate evidence which would sustain the conclusion of those members of the institution's unit evaluation committee who believed that Toscano should have been retained at CRC for treatment. ▉ On the other hand, it is obvious that a propensity for violence is a relevant reason for finding that a felon convicted of robbery and kidnaping is not a fit subject for confinement or treatment in a civil facility maintained for detention, treatment and rehabilitation of those found to be narcotic addicts, or in imminent danger of becoming addicted to narcotics. ▉ As we have seen the superintendent is not bound by the finding of the court before commitment, or by the favorable recommendations of a portion of his staff. No more can he be bound by the recommendation under the evaluation made under Penal Code section 1203.03.

The facts do reflect violence in connection with the crime of which defendant was convicted. His prior arrest record is not denied, although its significance may be questioned. The diagnostic study is unfavorable in that it points out that Toscano needs more controls than could be offered at the local level. It acknowledges that he has displayed some aggressive tendencies in the past, and concludes he was not a good candidate for probation. It was for the superintendent, charged with the maintenance and operation of CRC, to determine whether or not the controls of that institution would be sufficient to deal with Toscano's aggressive tendencies. His determination is supported by the record, and cannot be overturned because there is evidence to the contrary. He, and he alone, must make the decision on such a state of the evidence. The prosecutor and the sentencing court must keep in mind that since the bus

ride to CRC may be a round trip, they are not in a position to use it as an unqualified inducement for a plea bargain.

The order recommitting Toscano must be set aside.

The orders of recommitment with respect to defendants Toscano and Scott are reversed, and the trial court is directed to take such further proceedings on the pending criminal charges against each defendant as the court may deem warranted.

Elkington, J., and Lazarus, J.,* concurred.

Respondents' petition for a hearing by the Supreme Court was denied June 16, 1977.

---

*Retired judge of the superior court sitting under assignment of the Chairman of the Judicial Council.