[Crim. No. 9057. Third Dist. Mar. 3, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
RALPH GARCIA, Defendant and Appellant.

248

**Counsel**

Edward E. Moe, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Joel E. Carey and Arthur G. Scotland, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**PUGLIA, P. J.**—Defendant appeals from the judgment after the superintendent of the California Rehabilitation Center (CRC) terminated his civil commitment to that institution (Welf. & Inst. Code, § 3053.) Prior to the CRC commitment, defendant had pleaded guilty to selling heroin (Health & Saf. Code, § 11352). The plea was entered pursuant to a plea bargain calling for commencement of civil addict commitment proceedings (Welf. & Inst. Code, § 3051) and dismissal of prior felony convictions charged.[1]

At defendant's request, the trial court conducted a hearing to review his exclusion from the CRC. (*People* v. *Peoro* (1976) 56 Cal.App.3d 35, 39 [128 Cal.Rptr. 130].) On this appeal, defendant contends that his exclusion from CRC was an abuse of discretion and that the trial court erred in refusing to overturn the superintendent's decision. We affirm the judgment.

■ The scope of review of the superintendent's actions is well defined. If the finding of unfitness and return to the court is based on a reason other than excessive criminality the defendant is entitled to a review by the court to the extent of determining that the reason cited is legally relevant on the issue of the subject's fitness for confinement or treatment at CRC. (*People* v. *Toscano* (1977) 69 Cal.App.3d 140, 152 [137 Cal.Rptr. 893].) The defendant is also entitled to a determination that there is a factual basis supporting the established relevant reason. Once it is established that relevant reasons exist, the question of whether or not they are so serious as to require rejection from the program is for the superintendent and not for the court. (*Ibid.*)

Here the superintendent determined that defendant was not a suitable candidate for CRC in view of the violence that had occurred at CRC immediately prior to defendant's commitment, and defendant's past affiliation with one of the gangs that had precipitated the violence. The record reveals that the superintendent's reason for rejection was both supported by the facts and relevant.

---

[1]The prior convictions charged were alleged to have been incurred over the period 1958 to 1973 and included petty theft with a prior felony conviction (former Pen. Code, § 667), burglary on two separate occasions (Pen. Code, § 459), escape (Pen. Code, § 4530), grand theft (Pen. Code, § 487) and robbery (Pen. Code, § 211).

In the three-month period immediately preceding defendant's admission to CRC, there had been repeated instances of violence at the institution. Six inmates had been stabbed and one murdered. Information available to the CRC authorities indicated that the inmates involved in these violent assaults were members of rival prison gangs, including the Mexican Mafia.

In an effort to halt the violence, the superintendent began checking records of CRC admittees to determine if any were affiliated with the rival gangs. The record reveals that defendant had served time in a Youth Authority institution and thereafter in the state prisons at Soledad from 1962 to 1965 and San Quentin from 1969 to 1971. Most recently he had served 27 months in the state prison at Susanville from which he was released in September 1974.[2] At Susanville defendant had been associated with a known Mexican Mafia member named Santisteban who was also serving time in that institution. While there, Santisteban had been involved in the stabbing of an inmate who was a member of New Family, a prison gang. A list of Mexican Mafia members and affiliates had been compiled by the institutional investigator's office at Susanville. Information for the list was obtained from informants, inmate mail, observations of staff members, group photographs taken by the inmates and information from central files.[3] Defendant's name was on that list.

In letters written after the CRC hearing at which the foregoing information was developed, defendant did not deny his affiliation with the Mexican Mafia; he merely indicated that he was not a member. In a letter to a CRC official referring to the Mexican Mafia, defendant stated: "I don't deny my affiliation, but I've never been a member." In another letter to an Adult Authority official, defendant stated: "I never denied to you my affiliation or association with the Mafia, but I've never been involved in any of those actions like the Mr. Jones I wrote you about. [Sic.]" These letters became part of defendant's central file and were reviewed by the superintendent prior to his final decision to exclude defendant from the CRC.

[2]The evidence is directly conflicting whether Department of Corrections policy would have permitted a known member or affiliate of the Mexican Mafia to be paroled directly from the Susanville institution. Contrary to well settled precepts of appellate review, the dissent chooses to accept that version of the evidence which derogates from rather than supports the order under review.

[3]There was no entry in defendant's central file while he was at Susanville concerning gang membership or affiliation. None of the correctional personnel most closely associated with defendant at Susanville had any information that he was associated with a gang.

The revelance of the superintendent's reason for rejecting defendant from CRC is abundantly clear. CRC is a minimum security facility whose purpose is to treat and rehabilitate those individuals who are either addicted to the use of narcotics or are in imminent danger of becoming so addicted. (Welf. & Inst. Code, §§ 3053, 3301.) In order better to achieve the objectives of the institution, the custodial setting there is nonpunitive, utilizing open dormitories rather than individual cells; treatment personnel outnumber custodial personnel at least three to one and armed guards are not an omnipresent part of the environment as at the more secure custodial facilities.

Members and associates of prison gangs are likely targets of violence and may also be perpetrators of violent acts. Because of defendant's affiliation with one of the gangs responsible for the disturbances at the CRC, defendant's presence would create a very real possibility that gang violence and reprisals would continue. Because of its relatively relaxed atmosphere, CRC is a facility which cannot guarantee the safety of individuals who may become targets of violence. Under these circumstances, defendant's presence at CRC would be inimical to the orderly operation of the rehabilitative facility. (*People* v. *Hannagan* (1967) 248 Cal.App.2d 107, 114 [56 Cal.Rptr. 429].)

■ The different operational realities of managing a penal institution require that we accord wide ranging deference to the decisions of prison administrators. (*Jones* v. *North Carolina Prisoners' Union* (1977) 433 U.S. 119, 125-127 [53 L.Ed.2d 629, 638-639, 97 S.Ct. 2532].) "The interest in preserving order and authority in the prisons is self-evident. Prison life, and relations between the inmates themselves and between inmates and prison officials or staff, contain the ever-present potential for violent confrontation and conflagration. [Citations.] Responsible prison officials must be permitted to take reasonable steps to forestall such a threat, and they must be permitted to act before the time when they can compile a dossier on the eve of a riot." (Fn. omitted; 433 U.S. at pp. 132-133 [53 L.Ed.2d at p. 643].) "The informed discretion of prison officials that there is potential danger may be sufficient for limiting rights even though this showing might be 'unimpressive if . . . submitted as justification for governmental restriction [imposed upon] members of the general public.' [Citation.]" (*Id.,* at p. 133, fn. 9 [53 L.Ed.2d at p. 643].)

■ Relations among members of a prison population are entirely different from those among members of a free society. In the highly charged, explosive prison environment, the need for effective controls to

forestall violence before it occurs is manifest. On the other hand, a member of a free community is generally entitled to a presumption of probity until dispelled by commission of an unlawful act. The difference is crucial and provides the primary reason why we are satisfied that the superintendent, confronted with the information available to him, acted well within his discretion to defuse a situation potentially destructive to the rehabilitative mission of the institution.

The judgment is affirmed.

Janes, J., concurred.

**REYNOSO, J.**—I dissent. The record contains no substantial evidence that defendant was a member of or affiliated with a prison gang. The only "association" with a gang was that in 1974 and early 1975 at Susanville he, with 14 other inmates, shared a prison cell (assigned by prison authorities) with Santisteban, suspected by prison authorities of being a Mexican Mafia member.[1] Defendant also ate, ran track, and played handball with Santisteban from time to time as he did with other inmates. That is the entire "evidence."

The evidence that defendant was not a member is impressive. He spent 20 days at CRC before he was excluded. During that time his conduct was exemplary. On the 20th day he was excluded because his name was on an informal list (circulated among prison authorities) of Mexican Mafia members. However, the prison official who compiled the list "in late '74 or early '75" testified that he "can't truthfully say that I remember the exact reasons why he was put on the list." Subsequent testimony helped clarify the situation. Defendant's counselor at CRC initiated a call to an Officer Smith of San Quentin who reported that defendant had been "quiet" at San Quentin but had been an associate of Santisteban, a Mafia member, at Susanville. It was this report, apparently, which formed the basis for the exclusion order. On the other hand, stipulated testimony was received from three officials. First, a counselor at CRC testified that no gang affiliation appeared in defendant's confidential file (other than the 1976 Smith telephone conversation). The second official was the counselor assigned defendant in Susanville. He

---

[1]There is no evidence in the record that Santisteban was in fact a Mexican Mafia member.

testified that defendant had no gang association and that defendant would not have been paroled from Susanville, as he was, had any such association appeared in his file. Had defendant been associated with a gang a "confidential chrono" would have been placed in his file. None was. The third official was the 1975 parole officer who testified that he knew of no gang involvement.

The People attempt to buttress the reasonableness of the CRC action by pointing to letters written by the defendant *after* the date of the exclusion order. This is sophistry. The letters were written by defendant, who has the equivalent of a sixth grade education, appealing from the very order which excluded him for affiliation with a gang. He testified that he never "denied association with the Mafia" in the context only of his "association" with Santisteban. In his testimony he categorically denied membership or association with a gang. He always acknowledged his Susanville association with Santisteban. Thus, the majority incorrectly conclude that defendant did not deny "affiliation" with the Mexican Mafia. What he did not deny was sharing a cell and other normal prison activity with Santisteban. That is all.

In essence, we deal with this issue: What "factual basis" (see *People* v. *Toscano* (1977) 69 Cal.App.3d 140 [137 Cal.Rptr. 893]) may lawfully support the superintendent's determination? First, the superintendent does not advise what the term "affiliation" means. Second, on this record, I suggest that when the superintendent excludes a prisoner merely on suspicion of "affiliation" (whatever the term may mean) he excludes on no basis at all. All prisoners "affiliate" with other prisoners (so do prison authorities). Guilt by association with another who also was informally adjudged guilty by association appears to be the "factual basis" we are asked to approve. I respectfully decline.

On the record I find no substantial evidence that defendant was a member of or affiliated with a prison gang. The exclusion of defendant from treatment was an abuse of discretion.

A petition for a rehearing was denied March 24, 1978. Reynoso, J., was of the opinion that the petition should be granted. Appellant's petition for a hearing by the Supreme Court was denied April 27, 1978.