[No. B022128. Second Dist., Div. Five. Nov. 19, 1986.]

In re ARLENE KIMIE NAITO on Habeas Corpus.

**COUNSEL**

Wilbur F. Littlefield, Public Defender, Laurence M. Sarnoff and John Hamilton Scott, Deputy Public Defenders, for Petitioner.

John K. Van de Kamp, Attorney General, Carol Slater Frederick and Carol A. Greenwald, Deputy Attorneys General, for Respondent.

**OPINION**

**HASTINGS, J.**—In this original proceeding, petitioner Arlene Kimie Naito contends that she was unlawfully committed to the Department of Corrections when her parole was revoked for, in her words, "becoming mentally ill." The matter is before this court pursuant to an order to show cause issued by the Supreme Court.

Although petitioner has been released from custody, she is still on parole and subject to parole revocation on the same grounds as those giving rise to this petition. For that reason, we exercise our discretion to render an opinion in the case despite the fact that certain issues raised in the petition

are moot. (*Daly* v. *Superior Court* (1977) 19 Cal.3d 132 [137 Cal.Rptr. 14, 560 P.2d 1193].) We deny the petition.

## FACTS

In 1981, petitioner pled guilty to voluntary manslaughter after shooting and killing her boyfriend. She served approximately two years of a state prison sentence and was paroled in October 1984 for a three-year period. Petitioner was required while on parole to attend outpatient psychotherapy sessions and to take antipsychotic medication.

Petitioner's behavior while on parole was by and large satisfactory until November 1985. Petitioner had been referred for possible outpatient therapy to a program at St. John's Hospital in Santa Monica. The director of that program determined that petitioner was an inappropriate candidate for the program because she needed more intensive therapy than the program could provide.

Petitioner did not take this rejection lightly. She telephoned her parole agent, Betty Pannell, and accused Pannell of "trying to prevent her from getting the help she needed" and "trying to make her like parole." Petitioner also told Pannell she had "one last chance" to explain why she disliked petitioner. Although petitioner was agitated throughout the conversation, Pannell felt that petitioner was calm by the time the conversation ended.

A few days later, petitioner told Pannell's supervisor that Pannell was harassing her and making homosexual advances towards her. Petitioner also accused Pannell of trying to hurt her and prevent her from receiving therapy.

Pannell believed that petitioner might be blaming her for the fact that she was rejected by the St. John's program. Pannell also knew that petitioner could become violent and believed that petitioner's mental condition was becoming increasingly unstable. Based upon petitioner's history, Pannell perceived petitioner's "one last chance" comment as a threat. She went to petitioner's apartment to take her into custody. While there, Pannell observed on a table a bottle containing a number of tablets of Moban, the antipsychotic medication which petitioner was required to take while on parole. Pannell concluded, based upon the date the prescription was filled and the number of tablets remaining in the bottle, that petitioner had not been taking her medication as required. Pannell also asked petitioner what she meant by the comment, "You have one last chance." Petitioner's unsatisfactory explanation was, "I meant exactly what I said."

Petitioner was placed in custody at the Los Angeles County jail and examined by a staff psychiatrist from the Department of Corrections' Parole Outpatient Clinic (POC). Petitioner was diagnosed as suffering from paranoid schizophrenia, and the examining psychiatrist concluded that petitioner was "presently psychotic and would benefit from a psychiatric return to the institution for treatment." In a memo to Agent Pannell, petitioner's therapist at POC, Dr. Misao Kusuda, concluded: "I agree with your determination to place Ms. Naito in custody, for an emergency evaluation. As you stated, there were approximately fifteen unused tablets of her Moban in the bottle that was found in her possession. This suggests that the patient has been noncompliant with the treatment. I believe that the behavior which you observed, i.e., verbal hostility, accusations of homosexual advances, inappropriate laughter and crying, and paranoid ideation suggests that the patient was having psychotic symptoms. In view of her voluntary manslaughter, I believe that for the safety of the patient and of any potential victim, she should be in custody.

"As we discussed, the most likely potential victim is Parole Agent Pannell followed by the staff at Saint John's Hospital, where the patient was recently rejected for their treatment program because she is an inappropriate patient for their facility. In view of the patient's violent history and her probable noncompliance with medication, this patient is likely to become unpredictable in her behavior, and possibly violent. For this reason, I suggest that her time spent in custody be lengthy and that her release be dependent upon her psychiatric stability."

Although petitioner was taken into custody in November 1985, she did not have a formal parole revocation hearing until February 1986. At that time, the Board of Prison Terms (the Board) concluded that petitioner had violated condition number four of her parole by "threatening or harassing another," specifically Agent Pannell.[1] Petitioner's parole was revoked and she was returned to state prison for psychiatric treatment. She remained in custody until September 1986, when it was determined that her mental condition had stabilized sufficiently for her to once again be released on parole.

## DISCUSSION

Petitioner was taken into custody on an emergency basis pursuant to an administrative regulation of the Board which provides that a parole officer

---

[1]Upon release from prison on parole, a parolee must agree to parole conditions set forth in a form entitled "Notice and Conditions of Parole." Condition number four of the printed form provides: "4. CRIMINAL CONDUCT. You will not engage in conduct prohibited by law (state, federal, county or municipal). Conduct prohibited by law may result in parole revocation even though no criminal conviction occurs."

is required to report to the Board any behavior exhibited by the parolee which indicates that "the parolee may be suffering from a mental disorder which impairs the parolee's ability to maintain himself in community, or which makes the parolee a danger to himself or others when the mental disorder cannot be adequately treated while in the community." (Cal. Admin. Code, tit. 15, § 2615, subd. (a)(7) (hereinafter § 2615).)[2] As stated above, petitioner's parole was ultimately revoked for conduct which the Board determined to be a threat to Agent Pannell.

Petitioner contends that she was detained and returned to state prison for violating a parole condition which is invalid because it requires that she "not become mentally ill." This contention is without merit.

The United States Supreme Court has recognized that "[r]elease of [a] parolee before the end of his prison sentence is made with the recognition that with many prisoners there is a risk that they will not be able to live in society without committing additional antisocial acts." (*Morrissey* v. *Brewer* (1972) 408 U.S. 471, 483 [33 L.Ed.2d 484, 495, 92 S.Ct. 2593].) "Although a parolee is no longer confined in prison his custody status is one which requires and permits supervision and surveillance under restrictions which may not be imposed on members of the public generally." (*People* v. *Burgener* (1986) 41 Cal.3d 505, 531 [224 Cal.Rptr. 112, 714 P.2d 1251].) The Board of Prison Terms may impose upon the parolee conditions which it deems proper, and the liberty which a felon has when paroled is conditioned on his compliance with the terms upon which he is released. (*Ibid.*)

The criteria for assessing the constitutionality of a condition of probation, which applies as well to a condition of parole (*People* v. *Burgener, supra,* 41 Cal.3d at p. 532), were set forth by our Supreme Court in *People* v. *Lent* (1975) 15 Cal.3d 481 [124 Cal.Rptr. 905, 541 P.2d 545]. In *Lent,* the court held that a condition of probation will not be held to be invalid unless it (1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality. Conversely, a condition of probation which requires or forbids conduct which is not itself criminal is valid if that conduct is reasonably related to the crime of which the defendant was convicted or to future

---

[2] An abbreviated version of section 2615 is embodied in the "Notice and Conditions of Parole" form, which advises the parolee that, upon being granted parole, he or she may be returned to a Department of Corrections facility for up to one year "[w]hen the Board of Prison Terms determines, based upon psychiatric advice, that you pose a danger to yourself or others."

criminality. (*People* v. *Lent, supra,* 15 Cal.3d at p. 486; see also *People* v. *Smith* (1983) 145 Cal.App.3d 1032, 1035 [193 Cal.Rptr. 825].)

With these criteria in mind, we address petitioner's contention that she was returned to state prison for violating a parole condition which is invalid because it requires that she "not become mentally ill."

 ██ Petitioner presents a simplistic view of the nature of section 2615. That section does not address itself to behavior which is merely eccentric. Rather, it recognizes that a parolee whose mental state has deteriorated to the point where she (1) cannot maintain herself in the community, (2) is a danger to herself or others, and (3) cannot be adequately treated on an outpatient basis, is a likely candidate to repeat the criminal conduct which resulted in her conviction in the first place.

Here, petitioner was on parole after committing a voluntary manslaughter, a violent felony prompted by her mental instability. Petitioner might appropriately be described as "an individual who is emotionally unstable, has a poorly integrated personality, and has been convicted of criminal offenses against society." (*People* v. *Smith, supra,* 145 Cal.App.3d at p. 1035.) The behavior observed by Agent Pannell indicated that petitioner may have reached a crisis point when she was rejected by St. John's Hospital. Petitioner was hostile to Agent Pannell and exhibited other behavior (described by Dr. Kusuda as "inappropriate laughter and crying and paranoid ideations") indicating a rapidly deteriorating mental condition. The fact that petitioner could not be trusted to take her medication suggested that she could be treated effectively only in custody under close supervision.

Section 2615 is not a parole condition which punishes the parolee for "becoming mentally ill." Rather, it functions as a guide for the parole officer whose task is to recognize warning signs. In assessing whether the parolee's behavior amounts to conduct which must be reported to the Board, the parole officer cannot examine that behavior in a vacuum. Rather, the officer must look at how the parolee's mental condition contributed to his or her conviction, and the likelihood that the parolee, under appropriate mental conditions, will repeat that conduct. Because the criteria set forth in section 2615 relate both to "the crime of which the offender was convicted" and to "future criminality," that section does not amount to an unreasonable condition of parole under the standard set forth in *People* v. *Lent, supra,* 15 Cal.3d 481.

 Petitioner also contends that before being incarcerated, she was entitled to a trial by jury and proof of guilt beyond a reasonable doubt on the issue of whether she was in fact mentally ill. Prior to the time petitioner

was taken into custody, such a procedure was afforded to persons with severe mental disorders who, unlike petitioner, were not convicted felons. (Welf. & Inst. Code, § 5150 et seq.) Penal Code section 2960, effective July 1, 1986, provides that state prisoners with severe mental disorders are entitled to a jury trial on the issue of whether or not they are mentally ill if they meet a number of criteria. Should petitioner again violate her parole, she would be entitled to be evaluated under the criteria set forth in Penal Code section 2960. However, because that section was not in effect at the time petitioner was taken into custody, she was not entitled to such an evaluation at that time.

Since petitioner has been released from custody, the issue of whether petitioner was "improperly confined for three months without a hearing" is moot.

Because we have determined that the parole conditions under which petitioner's parole was revoked were not invalid, she is not entitled to credit against her term of parole for the time she spent in custody.

The order to show cause is hereby discharged and the petition for writ of habeas corpus is denied.

Feinerman, P. J., and Ashby, J., concurred.

A petition for a rehearing was denied December 8, 1986, and petitioner's application for review by the Supreme Court was denied January 29, 1987.