[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 663 
OPINION
During the course of administrative proceedings to be described, prison authorities designated inmate Chauncey T. Wilson as an "R" suffix prisoner, based on his supposed status as a sex-related crime offender, thereby imposing restrictions not ordinarily placed on prison inmates. The trial court granted Wilson's petition for a writ of habeas corpus and ordered the Warden of San Quentin State Prison and the Director of the Department of Corrections to remove the designation. These officials appeal from that order, contending that the trial court erred in concluding they had acted arbitrarily and capriciously. The question presented is whether this internal classification was properly imposed upon the basis of charges which were found true by a jury but subsequently dismissed by a court. We hold that this ground is sufficient to sustain the classification.
 BACKGROUND
On April 23, 1984, a jury returned verdicts finding Wilson guilty as charged of robbery, burglary, kidnapping, attempted extortion, and three counts of forcible rape. On June 4th, the trial court granted Wilson's motion for a new trial as to all charges save the burglary and attempted extortion counts, on the ground that the testimony of the purported rape victim was "inherently incredible." Defendant was thereupon sentenced to state prison.
On June 11th, the trial court was advised that the victim would not testify further. The court then granted the prosecution's motion to dismiss the remaining charges.[1]
On or about June 14th, correctional authorities prepared an "Institution Staff Recommendation Summary" concerning Wilson's classification. Based *Page 664 
upon the probation officer's report (which had been prepared in the interim between the jury's verdicts and the trial court's granting of a new trial) and an interview with Wilson, a correctional counselor recommended classification with the "R" suffix. In a portion of the summary entitled "Sex-Related-Offenses" the counselor noted: "During the commission of the instant offense, Wilson raped the 16-year-old female victim several times." This recommendation was adopted by three classification committees in July and August. Among the committees' comments are the following: "Wilson does have a prior arrest for forcible rape and, therefore, Committee is placing an `R' suffix on his custody level." "Commitment offense is sex [-]related, therefore `R' Suffix is deemed appropriate." "`R' designation is due to the POR [probation officer's report] and commitment offense."
Wilson was transferred to San Quentin prison in November of 1985. In July of the following year, Warden Vasquez advised Wilson that the latter's administrative appeal from the classification committees' "custody designation" had been denied at a "Second Level Review." After noting that the new trial motion papers submitted by Wilson did not substantiate "your contentions that all charges had been found to be false" and thus "is not considered as sufficient to remove the `R' suffix," Vasquez informed Wilson "I can find no merit for the reversal of their decision and for removal of the `R' suffix." Warden Vasquez termed the classification "appropriate."
Wilson appealed further. Correctional authorities conducted a review of all pertinent documents, including a transcript of the court proceedings at which Wilson's new trial motion was granted. In a memorandum submitted to the chief deputy warden, the reviewer stated: "During the sentencing phase, the Judge dismissed the three (3) [rape] counts on the basis that they were contrary to the evidence, . . .
"In reviewing the file further, the CII arrest sheet reveals that there is a 1973 arrest for unlawful intercourse with a minor. No disposition is shown. The inmate was twenty years old at the time.
"Based on the requirements of the Classification Manual, Subject should be assigned a Restricted custody while at San Quentin.
". . . The Judge of the court maybe [sic] very correct in his assessment of the situation, however, twelve people on the jury apparently thought otherwise. In view of the 1973 prior, I would prefer to error [sic] on the side of institution[al] security without further documentation."
In October of 1986, Wilson was informed that his appeal had been denied at a "Third Level Re[vi]ew." He thereafter commenced this action by *Page 665 
petitioning for relief in habeas corpus. After an order to show cause issued, appellants filed their return. Wilson filed a denial to appellants' return.
The trial court conducted a hearing on the petition and granted it upon determining that appellants' actions were "arbitrary and capricious." In its order directing issuance of the writ, the court commanded that "the `R' designation and all restrictions flowing therefrom be removed." This timely appeal followed.[2]
 REVIEW
The Director of Corrections has the statutory duty to classify every person committed to state prison following an individualized examination and study. (Pen. Code, § 5068.) Classification is made in accordance with regulations (Cal. Code Regs., tit. 15, § 3375 et seq.) which in slightly modified form constitute the "Classification Manual" (Manual) mentioned in the reviewer's letter quoted above.[3] The "R" suffix classification is governed by section 773, subdivision (a) of the Manual. As relevant here, that section provides in pertinent part: "(a) `R' suffix.
"(1) This suffix is applied to inmates who have committed a sex crime and is intended to limit their opportunity to escape, or re-offend while in custody. . . . [A]n inmate with an `R' suffix designation shall not be assigned outside of the security perimeter without direct constant supervision.
"(2) Those inmates convicted of, or when the conviction offense encompasses or is equivalent to, any of the below Penal Code sections shall have an `R' suffix placed after their custody designation. . . .
"(3) Those inmates arrested, detained or charged but not convicted of any Penal Code section listed below, or the equivalent, shall be carefully evaluted for the appropriateness of an `R' suffix by the receiving institution. . . . *Page 666 
". . . . . . . . . . . . . . . . . . . .
"(7) Penal Code Sections requiring an `R' suffix are:
"P.C. § 220, Assault with intent to commit rape, sodomy, oral copulation, rape in concert with another, lascivious acts upon a child, or penetration of genitals or anus with foreign object.
"P.C. § 261, Rape.
"P.C. § 262, Rape of spouse.
"P.C. § 264.1, Rape or penetration of genitals or openings by foreign object; acting in concert by force or violence.
"P.C. § 266b, Abduction to live in an illicit relation.
"P.C. § 285, Incest.
"P.C. § 286, Sodomy.
"P.C. § 286.5, Sexually assaulting animal.
"P.C. § 288, Lewd or lascivious acts with child under 14.
"P.C. § 288a, Oral copulation.
"P.C. § 289, Penetration of genital or anal openings by foreign object, etc."[4]
The trial court concluded that appellants had acted arbitrarily and capriciously in designating Wilson as an "R" suffix inmate. Our only function is to decide whether that ruling finds adequate evidentiary support.
Our task in making this determination is simplified by the parties' agreement that the appropriate standard of review is that established in Superintendent v. Hill (1985)472 U.S. 445 [86 L.Ed.2d 356, 105 S.Ct. 2768], which involved the revocation by prison officials of inmates' good time credits. Holding that the officials' action was supported by sufficient evidence, the court characterized the quantum of that evidence as "some evidence" which *Page 667 
it apparently equated with "a modicum of evidence" establishing "some basis in fact." (Id. at pp. 454-456 [86 L.Ed.2d at pp. 364-365].)[5]
(1) Whether "some evidence" supports appellants' classification of Wilson cannot be divorced from the harsh realities of prison governance. "Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." (Bell v. Wolfish (1979)441 U.S. 520, 547 [60 L.Ed.2d 447, 474, 99 S.Ct. 1861]; see Jones v.North Carolina Prisoners' Union (1977) 433 U.S. 119, 128
[53 L.Ed.2d 629, 640, 7 S.Ct. 2532]; People v. Valenzuela (1984)151 Cal.App.3d 180, 187 [198 Cal.Rptr. 469]; Department ofCorrections v. Superior Court (1982) 131 Cal.App.3d 245,253-254 [182 Cal.Rptr. 294]; People v. Garcia (1978)78 Cal.App.3d 247, 251 [144 Cal.Rptr. 176].) This deference, which extends to classification decisions (see Bradshaw v. Duffy
(1980) 104 Cal.App.3d 475, 483 [163 Cal.Rptr. 559]), limits judicial intervention to demonstrated instances of actions by prison officials that are arbitrary, capricious, irrational, or an abuse of the discretion granted those given the responsibility for operating prisons. (See In re Van Geldern (1971) 5 Cal.3d 832,836-837 [97 Cal.Rptr. 698, 489 P.2d 578]; In re Parker
(1984) 151 Cal.App.3d 583, 589 [198 Cal.Rptr. 796]; In re Gatts
(1978) 79 Cal.App.3d 1023, 1033 [145 Cal.Rptr. 419]; In reMuszalski (1975) 52 Cal.App.3d 475, 481 [125 Cal.Rptr. 281].)
The judicial attention given to internal prison classifications and procedures has largely been confined to whether the applicable administrative regulations were validly promulgated. (See Stoneham v. Rushen (1984) 156 Cal.App.3d 302
[203 Cal.Rptr. 20]; Stoneham v. Rushen (1982) *Page 668 137 Cal.App.3d 729 [188 Cal.Rptr. 130]; cf. In re Contreras (1975)45 Cal.App.3d 549 [119 Cal.Rptr. 757].) There is consequently no direct authority which controls the issue presented on this appeal. A considerable body of decisions in a related context, however, furnishes a fertile analogue for upholding appellants' classification of Wilson on the basis of the dismissed rape charges.
Any interest an inmate has concerning his classification is certainly of a lower order than his interest in the conditional restoration of his liberty entailed by a grant of parole. (2)
Nevertheless, courts of this state have repeatedly upheld administrative revocations of parole based upon information and circumstances which do not require an ironclad judgment of conviction. These include dismissal of the subsequent criminal charges upon which revocation was based (In re Melendez (1974)37 Cal.App.3d 967, 972-973 [112 Cal.Rptr. 755]; Pope v.Superior Court (1970) 9 Cal.App.3d 644, 647 [88 Cal.Rptr. 488] ), reversal of the subsequent conviction by virtue of the evidence upon which revocation was based having been obtained in an unconstitutional manner (In re Martinez (1970) 1 Cal.3d 641,644, 649-652 [83 Cal.Rptr. 382, 463 P.2d 734]), and even an outright acquittal at a trial of the charges upon which revocation was based. (In re Dunham (1976) 16 Cal.3d 63, 65,68-69 [127 Cal.Rptr. 343, 545 P.2d 255, 76 A.L.R.3d 571]; In reAnderson (1951) 107 Cal.App.2d 670, 671-674 [237 P.2d 720].) What has been stated with respect to the last circumstance would logically be equally applicable to all: in the wake of terminating judicial action prison administrators are not "`bound and barred from proceeding themselves to determine the facts of the charge.'" (In re Dunham, supra, at p. 67 [citing and quoting In re Anderson, supra, at p. 674].)
(3) We believe that a comparable latitude is properly allowed prison authorities to classify an inmate upon an examination of the circumstances which led to that inmate's commitment to a state prison. This conclusion is a natural consequence of differing roles. The function of courts, particularly in instances where a jury is sworn as the actual triers of fact, is to supervise the process by which guilt or innocence is determined. Prisons serve an altogether different purpose, and are administered by persons with other concerns. "An important function of the corrections system is the deterrence of crime. The premise is that by confining criminal offenders in a facility where they are isolated from the rest of society, a condition that most people presumably find undesirable, they and others will be deterred from committing additional criminal offenses. This isolation, of course, also serves a protective function by quarantining criminal offenders for a given period of time while, it is hoped, the rehabilitative processes of the corrections system work to correct the offender's demonstrated criminal proclivity. . . . [C]entral to all other corrections goals is the institutional consideration *Page 669 
of internal security within the corrections facilities themselves." (Pell v. Procunier (1974) 417 U.S. 817, 822-823
[41 L.Ed.2d 495, 501-502, 94 S.Ct. 2800].)
Subdivision (a)(1) of section 773 of the Manual clearly evidences the concern to protect other persons with whom the inmate may come into contact at the prison. It expressly provides that it "is intended to limit their opportunity to . . . re-offend while in custody" by preventing the inmate being "assigned outside of the security perimeter without direct constant supervision." The emphasis is necessarily prospective, requiring prison officials to evaluate the inmate's potential for committing future offenses. The potential for future criminality is unquestionably a valid concern for prison authorities to consider. (See, e.g., In re Price (1979) 25 Cal.3d 448, 453-455
[158 Cal.Rptr. 873, 600 P.2d 1330]; In re Bennett (1969)71 Cal.2d 117, 120 [77 Cal.Rptr. 457, 454 P.2d 33]; In re Naito,supra, 186 Cal.App.3d 1656 at pp. 1661-1662; Morris v.Castro (1985) 166 Cal.App.3d 33, 39-40 [212 Cal.Rptr. 299].) An element of speculative prediction is unavoidably involved. "The interest in preserving order and authority in the prisons is self-evident. Prison life, and relations between the inmates themselves and between the inmates and prison officials or staff, contain the everpresent potential for violent confrontation and conflagration. [Citation.] Responsible prison officials must be permitted to take reasonable steps to forestall such a threat, . . ." (Jones v. North Carolina Prisoners' Union, supra,433 U.S. 119 at p. 132 [53 L.Ed.2d at p. 643]; accord People v.Garcia, supra, 78 Cal.App.3d 247 at p. 251.)
The most obvious, and the most accurate, basis for predicting an inmate's potential for future criminality is the inmate's history of past criminality. This is precisely where the classification committees looked to form their estimation of Wilson's possible behavior. That they in effect aligned themselves with the jury which found Wilson guilty as charged of multiple instances of forcible rape, and against the judge who had granted a new trial on these charges, does not constitute a valid basis for judicial interdiction. The fact that those charges were ultimately dismissed does not amount to a conclusive determination that Wilson was innocent, but only that his guilt had not been proven beyond a reasonable doubt to the satisfaction of both the jury and the court. (See In re Dunham, supra,16 Cal.3d 63 at p. 67; People v. Scott M. (1985) 167 Cal.App.3d 688,698-699 [213 Cal.Rptr. 456]; People v. Takencareof
(1981) 119 Cal.App.3d 492, 499-500 [174 Cal.Rptr. 112]; In reAnderson, supra, 107 Cal.App.2d 670 at p. 672.) Subdivision (a)(3) of section 773 of the Manual expressly contemplates that classification may be based solely on sex-related crimes with which the inmate was charged but not necessarily convicted. The classification committees were not precluded from imposing restrictions on Wilson's limited freedom *Page 670 
within prison unless and until convinced beyond a reasonable doubt. Accordingly, the committees did not exceed their legitimate authority by deciding to "err on the side of institution[al] security" following their "proceeding themselves to determine the facts of the charge[s]." (In re Anderson,supra, at p. 674; accord In re Dunham, supra, at pp. 67, 69.) Nor did they err in concluding that Wilson posed a recidivist danger they were not required to tolerate without appropriate precaution.
The record on which that decision was taken consists of the probation officer's report and a transcript of the new trial and sentencing proceedings. These sources demonstrate that the classification decision was not the product of "mere whim, caprice, or rumor." (See In re McLain (1960) 55 Cal.2d 78, 87
[9 Cal.Rptr. 824, 357 P.2d 1080]; In re Fain (1976)65 Cal.App.3d 376, 395 [135 Cal.Rptr. 543]; In re Spence (1974)36 Cal.App.3d 636, 639-640 [111 Cal.Rptr. 782].) Because the record thus includes more than "a modicum of evidence" establishing that the classification decision had "some basis in fact," appellants' actions should have been sustained according to the "some evidence" standard of Superintendent v. Hill, supra,472 U.S. 445. The trial court therefore erred in concluding that those actions were "arbitrary and capricious."
In light of this conclusion, it is unnecessary to determine whether Wilson's 1973 arrest for violating Penal Code section261.5 (which is not one of the statutes listed in section 773 of the Manual or California Code of Regulations, title 15, section 3377.1, subdivision (b)) also supports appellants' imposition of the "R" classification.
The order is reversed.
Anderson, P.J., and Channell, J., concurred.
Respondent's petition for review by the Supreme Court was denied September 29, 1988. Mosk, J., was of the opinion that the petition should be granted.
[1] This court affirmed the conviction of Wilson and his codefendant George Nagle in an unpublished opinion (A027608) filed on November 24, 1987.
[2] It has come to our attention that Wilson was released on parole during the pendency of this appeal. Both sides, however, urge us not to treat the appeal as moot because revocation of Wilson's parole would reopen the propriety of assigning him an "R" classification. Appellants also argue that their appeal should not be dismissed even if it technically is moot because the issue presented of "what is the standard of review that courts must use in reviewing classification decisions made by prison officials" "appears to be one of first impression" and is likely to recur. We accept these grounds as legitimate reasons for not ordering dismissal of this appeal as moot. (See In reWalters (1975) 15 Cal.3d 738, 744 [126 Cal.Rptr. 239,543 P.2d 607]; People v. Williams (1987) 194 Cal.App.3d 124, 132
[239 Cal.Rptr. 375]; In re Naito (1986) 186 Cal.App.3d 1656,1658-1659 [231 Cal.Rptr. 506]; In re Lee (1978) 78 Cal.App.3d 753,756 [144 Cal.Rptr. 528].)
[3] We appreciate the Attorney General furnishing us with a copy of the Manual.
[4] The substance of this section of the Manual appears as subdivision (b) of section 3377.1 of title 15 of the California Code of Regulations.
[5] The Hill court gave substance to its holding by noting that "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." (Superintendent v. Hill, supra,472 U.S. 445 at pp. 455-456 [86 L.Ed.2d at p. 365] [italics added].) The court made it clear that the "some evidence" test was less stringent than the constitutional standard of evidence required to sustain a criminal conviction. (Id. at p. 456 [86 L.Ed.2d at p. 365]; see Jackson v. Virginia (1979) 443 U.S. 307, 318-319
[61 L.Ed.2d 560, 573, 99 S.Ct. 2781].) It is equally clear that the "some evidence" standard of Hill is more relaxed than California's substantial evidence test, which requires examination of the entire record and is not satisfied by the presence of some evidence. (See People v. Johnson (1980)26 Cal.3d 557, 576-577 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].)
We cannot accept appellants' claim that the trial court failed to apply the "some evidence" standard. Although the trial court did not articulate the standard it was applying, we are not justified in presuming that it failed to evaluate appellants' classification decision for its conformity with the Hill test. (See Evid. Code, § 664; Ross v. Superior Court (1977)19 Cal.3d 899, 912-916 [141 Cal.Rptr. 133, 569 P.2d 727].) Moreover, it is virtually inconceivable that the court could have used a less demanding standard. *Page 671