[No. C041492. Third Dist. June 23, 2003.]

In re LIONEL FARLEY on Habeas Corpus.

**COUNSEL**

Lionel Farley, in pro. per.; and S. Lynne Klein, under appointment by the Court of Appeal, for Petitioner Lionel Farley.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Paul D. Gifford, Assistant Attorney General,

Susan Duncan Lee, Allen R. Crown and Constance L. Picciano and Matthew D. Mandelbaum, Deputy Attorneys General, for Respondent the People.

## OPINION

**SIMS, Acting P. J.**—The California Department of Corrections (CDC) identifies sex offenders in the prison population by affixing an "R" suffix to the inmate's custody designation. This habeas corpus proceeding involves the interpretation of subdivision (b)(1) and (2) of section 3377.1 of title 15 of the California Code of Regulations, which provides in relevant part as follows:

"(b) An 'R' suffix shall be affixed by a classification committee to the inmate's custody designation to alert staff of inmates who have a history of specific sex offenses.

"(1) The 'R' suffix shall be designated for any inmate who was convicted of, or whose commitment offense includes an act equivalent to any of the following offenses: [¶] . . . [¶]

"(J) Oral copulation. [¶] . . . [¶]

"(2) Within six months upon reception of an inmate with a record of arrest or detention for any offenses listed in section 3377.1(b)(1), a classification committee shall determine the need for an 'R' suffix to the inmate's custody designation. The committee shall consider the arrest reports and district attorney's comments related to each such arrest."[1]

We shall conclude that subdivision (b)(1) and (b)(2) provide for independent grounds for attaching an "R" suffix and that, in this case, CDC properly relied on subdivision (b)(2) to attach an "R" suffix to petitioner's custody designation.

### BACKGROUND

On June 8, 1998, the Los Angeles County Superior Court sentenced petitioner Lionel Farley to 47 years eight months in prison for assaulting a

---

[1]Hereafter, we will refer to California Code of Regulations, title 15, section 3377.1, as *regulation 3377.1* and to subdivision (b)(1) and (2) thereof simply as *subdivision (b)(1)* and *subdivision (b)(2)*.

peace officer with a semiautomatic firearm (Pen. Code, § 245, subd. (d)(2)),[2] conspiracy (§ 182, subd. (a)(1)), seven counts of attempted burglary (§§ 211, 664), shooting at an occupied building (§ 246), possession of a firearm by a felon (§ 12021, subd. (a)(1)), and several gun-related sentence enhancements (§§ 12022, subd. (a)(1), 12022.5, subd. (a)(1)). All the commitment offenses occurred in 1997.

In August 2000, a CDC classification committee reviewed petitioner's custody status and decided to attach an "R" suffix to his custody designation. Its written decision stated: "This Committee notes that the Subject was arrested on 12/06/95 by the LA SO [Los Angeles County Sheriff's Office] for Oral Copulation in Concert with Force and as a result requires an 'R' suffix review. This charge was dismissed by the Santa Monica district attorney and the arrest report regarding this charge has been reviewed and placed in the miscellaneous section of the C-file. On 08/02/00 contact was made with the Santa Monica district attorney, Mr. John Breault, regarding the dismissal of this charge. Mr. Breault related that the victim in this case was willing to testify against the defendant however because the friend of the victim did not want to testify and her statement was different from that of the victim, the district attorney dismissed the charge as successful prosecution was not probable. It is noted that the friend of the victim was working as a Prostitute for Inmate FARLEY. Committee finds that FARLEY meets criteria per [regulation 3377.1] and [Department Operations Manual] section 62010.4.3.1 for restricted custody status and as a result acts to affix the same."[3]

The arrest report shows the victim gave the following statement to deputies: The victim, who lived out of state, received a phone call from a friend residing in Los Angeles. The friend asked the victim to come to California for a vacation, and offered to pay her airfare. Apparently, the victim did not know her friend was a prostitute and that petitioner was her friend's pimp. The victim arrived at Los Angeles International Airport at 1:00 a.m., checked into a hotel, and called the prostitute. The prostitute was not home, but petitioner answered the phone and took a message in which victim revealed her hotel and room number. At 3:30 a.m., petitioner and the prostitute appeared at the victim's hotel room. Petitioner told the victim he was the world's best pimp and wanted to be her "man"; the victim said she was not a prostitute and declined his offer.

---

[2]Undesignated statutory references are to the Penal Code except as otherwise specified.

[3]Department Operations Manual section 62010.4.3.1, based on regulation 3377.1, subdivision (b)(2), states: "Inmates arrested, detained or charged with any of the listed offenses, or the equivalent, shall be carefully evaluated for an 'R' suffix at the receiving institution and presented to a classification committee within 6 months of reception. The committee shall consider the arrest reports and district attorney's comments related to each such arrest and document their determination on the CDC Form 128-G."

Petitioner then threatened the victim and compelled her to leave with him. He forced the victim to his car, where they met the prostitute; two other women were in the backseat. Petitioner drove to Sunset Boulevard and dropped off the two other women, who began flagging down cars. Petitioner told the victim "that's the way you do it," then took her back to her hotel room and told her she could not leave.

The victim woke up at 9:00 a.m. to find petitioner and the prostitute having sex in her bed. Petitioner then told the victim to take off her clothes because she was next, threatened her when she refused, and forcibly disrobed her, but the victim successfully deterred him by claiming to have a health problem. At noon, petitioner, the prostitute and the victim (against her will), left the hotel and went to several clothing stores to shop for victim's new professional wardrobe.

While in the car with petitioner and the prostitute, the victim said she needed to use a bathroom, so petitioner pulled to the side of road and told her to squat and urinate near the front yard of a house. When the victim began to urinate, petitioner unzipped his pants and rammed his erect penis into her mouth. The victim resisted and pushed petitioner away. Petitioner then forced her back into the car. The victim eventually escaped when petitioner fell asleep at another hotel.

The report also stated the deputies found petitioner asleep where the victim left him. They arrested and booked him on charges of forcible oral copulation in concert (§ 288a, subd. (d)(1)), kidnapping (§ 207, subd. (a)), pandering (§ 266i), false imprisonment (§ 236), and unlawful possession of a firearm (§ 12021, subd. (e)).

The record shows petitioner entered into a plea bargain in connection with the 1995 charges, under which he was convicted of unlawful possession of a firearm; the other counts, including forcible oral copulation in concert, were dismissed; and he was placed on three years' felony probation with 180 days in county jail.

Petitioner exhausted his administrative remedies within CDC and then filed a petition for writ of habeas corpus in the trial court. After the trial court denied relief, petitioner filed a habeas corpus petition in this court, claiming CDC misapplied regulation 3377.1 and seeking deletion of the "R" suffix.

CDC's preliminary opposition to the petition relied solely on subdivision (b)(1)(J), which requires CDC to examine an inmate's commitment offenses.

(See p. 1358, *ante.*) CDC contended petitioner's "commitment offense certainly 'included' an act of oral copulation." We then issued an order to show cause before this court why the relief prayed for in the petition should not be granted. CDC's return reiterated the legal and factual arguments of the preliminary opposition.

At oral argument on February 25, 2003, CDC conceded its reliance on subdivision (b)(1)(J) was erroneous, since petitioner's commitment offenses occurring in 1997 did not include an act equivalent to any of the listed sex offenses. Petitioner was charged with forcible oral copulation (§ 288a, subd. (d)(1)) in the unrelated 1995 case, but that charge was dismissed and petitioner pleaded guilty to other charges and was placed on probation. So far as the record indicates, probation was never revoked in the 1995 case, and that case did not form any basis for petitioner's 1998 commitment to CDC. Nor does the record show petitioner has been convicted of any listed sex offense. Hence, we accept CDC's concession.

However, for the first time at oral argument, CDC claimed petitioner's "R" suffix is nonetheless correct under subdivision (b)(2). (See p. 1358, *ante.*) CDC argued that subdivision (b)(2) independently vests the CDC classification committee with discretion to impose the "R" suffix in appropriate circumstances even where subdivision (b)(1) does not apply. We deferred submission of the cause and directed the parties to file supplemental briefs on the effect of subdivision (b)(2). Both parties did so.[4] Having considered all matters submitted by the parties, we conclude CDC correctly interprets subdivision (b)(2), and that the "R" suffix is proper under that interpretation. Accordingly, we shall discharge the order to show cause and deny the petition for writ of habeas corpus.

## DISCUSSION

■ Judicial review of a CDC custody determination is limited to determining whether the classification decision is arbitrary, capricious, irrational, or an abuse of the discretion granted those given the responsibility for operating prisons. (*In re Wilson* (1988) 202 Cal.App.3d 661, 667 [249 Cal.Rptr. 36].) "While we must uphold respondent's classification action if it

---

[4]On April 28, 2003, petitioner filed a "Request to Take Judicial Notice of Regulation History Documents." We grant the request and have reviewed those materials, but find that they do not resolve the question before us. On the same date, petitioner filed a "Supplemental Brief and Traverse In Reply to Respondent's Supplemental Return to Order to Show Cause." Petitioner objected to the return and the supplemental return on the ground they are not verified. We need not rule on petitioner's objections because we have considered only CDC's legal arguments and, in any event, the material facts are not in dispute and are established by petitioner's own filings.

is supported by ' "some evidence" ' (*In re Wilson* [, *supra,*] 202 Cal.App.3d 661, 666-667 . . . ; *Superintendent* v. *Hill* (1985) 472 U.S. 445, 454-456 [86 L.Ed.2d 356, 363-365, 105 S.Ct. 2768]), and we must afford great deference to an administrative agency's expertise (*In re Carter* (1988) 199 Cal.App.3d 271, 276 [244 Cal.Rptr. 648]) 'where the agency's interpretation of the regulation is clearly arbitrary or capricious or has no reasonable basis, courts should not hesitate to reject it' (*id.*, at p. 277)." (*In re Lusero* (1992) 4 Cal.App.4th 572, 575 [5 Cal.Rptr.2d 729].)

■ CDC contends that regulation 3377.1 "is written in a form making these alternative methods of imposing an 'R' suffix"—i.e., subdivision (b)(1) and (b)(2)—"independent and coequal." We agree.

Under subdivision (b)(1) (see p. 1358, *ante*), the applicability of the "R" suffix is governed by whether the inmate actually has been convicted of a listed sex crime or his current commitment offense includes an act equivalent to a listed sex crime (even absent a conviction). Imposition of the "R" suffix is automatic and mandatory if defendant meets either of the criteria in subdivision (b)(1).

Under subdivision (b)(2) (see p. 1358, *ante*), the "R" suffix may be appropriate even absent an enumerated sex crime conviction or equivalent conduct related to the commitment offense. Instead, the applicability of the suffix is governed by whether the inmate has been arrested or detained for a sex crime, but only if the classification committee "determine[s] the need for an 'R' suffix" *after* considering "the arrest reports and district attorney's comments related to each such arrest." (Subd. (b)(2); see p. 1358, *ante*.)[5] Subdivision (b)(2) vests discretion in the classification committee to apply the "R" suffix if the arrest reports and the district attorney's comments justify it.

Subdivision (b)(2) implicitly requires the classification committee, in the exercise of its discretion, to decide whether the arrest reports and district attorney's comments provide a sufficient basis to believe the inmate actually engaged in the criminal sexual act for which he was arrested. A court must uphold the classification action if it is supported by " 'some' " evidence. (*In re Wilson, supra,* 202 Cal.App.3d 661, 666-667.)

Here, the classification committee imposed the "R" suffix only after first considering the arrest report and district attorney's comments, the procedure

---

[5]We note the first sentence of regulation 3377.1, subdivision (b)(2) refers to "a record of arrest or detention," but the second sentence requires the classification committee to consider "arrest" reports and the district attorney's comments related to "each such arrest." Since the present case involves an arrest, we express no opinion under what circumstances, if any, CDC may impose the "R" suffix on an inmate who was merely detained, but not arrested, with respect to a listed sex crime.

required by subdivision (b)(2). The information relied on by the classification committee, including the arrest report, the contents of which we have recounted, was "some evidence" that petitioner actually committed forcible oral copulation despite the dismissal of the charge. His alleged victim was willing to testify against him, but her friend—who was working as a prostitute for petitioner—either would not testify against him or had given a statement that differed from the victim's.

Petitioner makes no attempt to dispute the facts relied on by the classification committee. Instead, he claims his 1995 arrest and the information CDC gleaned from the arrest report and the district attorney in the 1995 case are irrelevant under his interpretation of subdivision (b)(2). He argues subdivision (b)(2) simply requires the prison to which an inmate is assigned to decide whether to retain an "R" suffix previously imposed at a CDC reception center under subdivision (b)(1) in cases where the inmate has not been convicted of a listed sex crime (i.e., where the suffix is based only on an act related to the commitment offense). In petitioner's construction, subdivision (b)(2) allows a prison classification committee only to retain or remove a preexisting "R" suffix, but does not allow it to impose an "R" suffix in the first place.

We disagree with petitioner's interpretation. He concedes the language of subdivision (b)(2) is unambiguous and hence that resort to extrinsic materials is unnecessary, and we agree. We also note that if the "arrest" mentioned in the first sentence of subdivision (b)(2) meant the arrest for the commitment offense—implicit in petitioner's view of the interaction between subdivision (b)(1) and (b)(2)—then there would be no need for the second sentence of subdivision (b)(2) to refer to "each such arrest." The fact it refers to "each such arrest" strongly suggests that it is referring to any and all arrests for listed sex crimes, whenever they occurred, and regardless of their relationship to the commitment offense.

"Notwithstanding the lack of ambiguity," petitioner has asked us to examine the regulatory history of regulation 3377.1, and we have done so in an abundance of caution. We disagree with his view that "to the extent there is any ambiguity," the regulatory history materials support his construction of subdivision (b)(2) and defeat CDC's interpretation.

At best for petitioner, the regulatory history indicates the CDC reception center was sometimes assigning the "R" suffix based on no more than an arrest for a listed sex crime, such that subsequent evaluation based on further information was "necessary to ensure 'R' suffixes are based upon verifiable information." This reflects CDC's intent not to impose an "R" suffix based

on a bare record of an arrest unrelated to the commitment offense. However, the regulatory history does not show an intent to prevent an institution classification committee from imposing an "R" suffix on an inmate for the first time pursuant to subdivision (b)(2). Under petitioner's interpretation, if the CDC reception center failed for whatever reason to impose an "R" suffix under subdivision (b)(1), then CDC could *never* thereafter attach an "R" suffix under subdivision (b)(2) absent a sex crime conviction or a relationship to the commitment offense, even if the classification committee received irrefutable evidence that the inmate actually committed a listed sex crime. This would mean that in many cases that are disposed of by plea bargains, where certain charges are dismissed, CDC would be unable to classify defendants as sex offenders even though reliable information from arrest reports and district attorneys shows that the defendant did, in fact, commit a qualifying sex offense. In our view, petitioner's interpretation would hamper CDC's classification of inmates and is therefore unreasonable.

Petitioner also argues that CDC should be estopped to rely on subdivision (b)(2) because CDC's "Director's Level Appeal Decision" (denying petitioner's internal appeal and resulting in exhaustion of his administrative remedies) in part defended the "R" suffix on the ground a listed sex crime was part of his commitment offense. Petitioner cites no authority for his position. In any event, we reject his claim.

Even though the director's level appeal decision did not expressly cite subdivision (b)(2), a different part of the decision implicitly relied on it, stating: "Whereas the sex offense was not part of the charges the appellant was sentenced to prison under, statements of the arresting officer and the testimony of the victim support that the sex acts did occur." Also, the director's level appeal decision should be read in light of both the second level response that preceded it (stating the "R" suffix was justified because of the 1995 arrest, arrest report, and district attorney's comments) and the classification committee decision (relying on the same facts) that triggered the administrative appeals.

Next, petitioner claims the "R" suffix is illegal because it was "considered, but not applied, by other classification committees," and therefore could be imposed only by CDC's Departmental Review Board. He relies on subdivision (b)(5) of regulation 3377.1, providing: "When an 'R' suffix has been considered and not applied, or has been removed at one facility, another facility shall not affix an 'R' suffix. If the facility disagrees with the 'R' removal or decision against 'R' designation, it shall submit the case for a Departmental Review Board decision." There is no evidence that the "R"

suffix was considered and rejected by CDC prior to the August 2000 classification committee decision at issue here. The documents cited by petitioner show only that in August 1998, December 1999, and May 2000, the classification committee was requesting information about the 1995 arrest from the Los Angeles County District Attorney and Los Angeles County Sheriff's Office.

Petitioner also contends, "The Regulation, As Construed by Respondent, Is Vulnerable to Constitutional Attack," but fails to identify the constitutional provision he claims is involved. He relies solely on an excerpt from *In re Wilson, supra,* 202 Cal.App.3d 661. Petitioner argues: "In rejecting the claim that the department's actions were arbitrary and capricious, the *Wilson* court stated:

" 'We believe that a comparable latitude is properly allowed prison authorities to classify an inmate upon an *examination of the circumstances which led to the inmate's commitment to a state prison.*' (*In re Wilson, supra,* 202 Cal.App.3d at p. 668; emphasis added.)

"The circumstances of Petitioner's 1995 arrest did not lead to his commitment to state prison. Thus, the reasoning underlying *Wilson*'s holding that the regulation is not arbitrary and capricious to allow a[n] 'R' classification when there has not been a conviction does not apply in the instant case."

We reject the argument. Nothing in *Wilson* suggests that a relationship to the commitment offense defines the outer limit of CDC's discretion to impose the "R" suffix on an inmate without a sex crime conviction. *Wilson* analyzed subdivision (b)(1) in the context of a commitment-offense-related sex crime because that was the situation present in that case.[6] ■ "Language used in any opinion is of course to be understood in the light of the

---

[6] In *Wilson, supra,* 202 Cal.App.3d 661, a jury found the petitioner guilty of robbery, burglary, kidnapping, attempted extortion, and three counts of forcible rape. (*Id.* at p. 663.) The trial court granted petitioner's motion for new trial on all charges except burglary and attempted extortion because it found the rape victim's testimony was " 'inherently incredible.' " (*Ibid.*) The victim declined to testify further and the trial court then granted the district attorney's motion to dismiss the remaining charges. (*Ibid.*) Petitioner was then sentenced to CDC, which assigned the "R" suffix because " '[d]uring the commission of the instant offense, Wilson raped the 16-year-old female victim several times.' " (*Id.* at pp. 663-664.) CDC found the " '[c]ommitment offense is sex[-]related' " and stated the "R" suffix was based on the " 'POR [probation officer's report] and commitment offense.' " (*Id.* at p. 664.) In denying petitioner's administrative appeal, CDC found his new trial papers were not sufficient to prove that the rape charges were false. (*Id.* at p. 664.) CDC also took the position that although the trial court's action on the rape charge might have been correct, 12 jurors thought differently, and CDC preferred to err on side of institutional security. (*Ibid.*) Petitioner then sought and obtained habeas corpus relief in the trial court, which ordered CDC to remove the "R" suffix. (*Id.* at p. 665.) The Court of Appeal reversed the order granting habeas corpus

facts and the issue before the court, and an opinion is not authority for a proposition not therein considered." (*Ginns v. Savage* (1964) 61 Cal.2d 520, 524, fn. 2 [39 Cal.Rptr. 377, 393 P.2d 689].)

Here, CDC properly relied upon subdivision (b)(2) to affix an "R" suffix to petitioner's inmate custody designation. Petitioner's arguments to the contrary are without merit.

## DISPOSITION

The order to show cause is discharged and the petition for writ of habeas corpus is denied.

Nicholson, J., and Morrison, J., concurred.

Petitioner's petition for review by the Supreme Court was denied October 15, 2003. Baxter, J., did not participate therein.

---

relief. (*Id.* at p. 670.) Applying the highly deferential standard of *Superintendent v. Hill* (1985) 472 U.S. 445, 454-456 [105 S.Ct. 2768, 2773-2775, 86 L.Ed.2d 356] (requiring only "some evidence," equated with "a modicum of evidence" establishing "some basis in fact"), the *Wilson* court found there was enough evidence to support the "R" suffix. (*Wilson*, at pp. 666-667, 670.) The court noted CDC in effect had aligned itself with the jury which found petitioner guilty of the rapes, and against the trial court which granted a new trial on those charges; the mere fact that the rape charges were eventually dismissed did not conclusively prove petitioner was innocent, but only that his guilt had not been proven beyond a reasonable doubt to the satisfaction of both the jury and the trial court. (*Id.* at p. 669.)